STATE OF OREGON,
*Appellant,*

*v.*

STEPHEN LAMONT MARTIN,
*Respondent.*

(95-03-31796; CA A88759)

934 P2d 467

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R.

Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David C. Degner, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

Edmonds, J., dissenting.

## LANDAU, J.

The state appeals an order suppressing evidence obtained from defendant's arrest, which occurred while he was standing on a street corner late at night in an area known to be a site of drug transactions. The trial court held that the arresting officer lacked probable cause to believe that defendant had committed a crime. The state contends that, because of the time of day, the location of the arrest and the fact that defendant had been observed two hours earlier engaging in what could have been a drug transaction, the arrest was supported by probable cause. We agree with the trial court and affirm.

Around 11:20 p.m., Portland Police Officer Mahuna was driving to work in his personal car when he stopped at a red light at the intersection of Northeast Killingsworth and Albina Streets. Immediately in front of his car was a van that also had stopped for the light. Mahuna could see both the driver and a passenger through a window in the back of the van. He also could see defendant standing near a bus shelter on the adjacent sidewalk, about ten feet away. The officer saw the passenger in the van gesture to defendant and say something to defendant, although he could not hear what the passenger said. Defendant looked to the left and to the right, stepped into the street and approached the van. Defendant put his head and one hand into the open passenger window for about three seconds. He then turned and walked away. Mahuna saw no money or any other objects exchanged. As defendant walked back toward the sidewalk, he put his right hand into his right rear pants pocket. Mahuna did not, however, see whether defendant put any object into his pocket. The light then turned green, and both the van and Mahuna drove away. At that point, Mahuna believed that he had just witnessed a hand-to-hand drug transaction. In his experience, the area is a known location for such transactions; he had made numerous arrests for possession and delivery of a controlled substance at that very corner. Mahuna refrained from arresting defendant because he was not yet on duty.

Two hours later, while on duty, Mahuna returned to the intersection of Northeast Killingsworth and Albina Streets. He saw defendant standing on the same corner.

Mahuna stopped, got out of his car, approached defendant and told defendant to put his hands on his head. Defendant did so, while Mahuna patted down his right rear pocket. Mahuna felt an object in the pocket that he suspected was rock cocaine. He reached into the pocket and removed a plastic bag containing what appeared to be cocaine. Mahuna then arrested defendant, who subsequently was charged with possession and delivery of a controlled substance. ORS 475.992.

Defendant moved to suppress the evidence. The trial court granted the motion, concluding that, although Mahuna believed that he earlier had observed defendant engage in a criminal act, that subjective belief was not objectively reasonable, particularly in the absence of any observation that defendant had exchanged any object with the persons in the van.

On appeal, the state argues that the trial court erred in concluding that Mahuna's subjective belief that defendant had committed a crime was not objectively reasonable. According to the state, Mahuna knew from many years of training and experience that the intersection at which he observed defendant was a "notorious" drug-dealing location. He also knew from his training and experience that defendant's actions at the intersection were at least consistent with a drug transaction. That knowledge, coupled with defendant's continued presence at the intersection so late at night, the state contends, amounts to an objectively reasonable basis for concluding that defendant probably had committed a crime. Citing our decisions in *State v. Reid*, 107 Or App 352, 811 P2d 1380 (1991), and *State v. Jones*, 9 Or App 629, 498 P2d 390 (1972), the state insists that the lack of any observation of an actual exchange is not fatal to its case. Defendant argues that the trial court correctly concluded that the arrest was not supported by probable cause.

ORS 133.310(1)(a) provides that an officer may arrest a person without a warrant "if the officer has probable cause to believe that the person has committed * * * [a] felony." ORS 131.005(11) defines "probable cause" to mean:

"[T]here is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

In reviewing a trial court's determination as to probable cause, we accept all findings of historical fact supported by the record and examine the existence of probable cause as a legal conclusion. *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986). In performing that examination, we consider the totality of the circumstances. *State v. Rusnak*, 128 Or App 488, 491, 876 P2d 848 (1994).

■    We conclude that the trial court correctly determined that, on the record before it, the arrest of defendant was not supported by probable cause. The facts simply do not establish a substantial basis for concluding that it was more likely than not that defendant had committed a crime. At best, they show that defendant was standing on a street corner in a high-crime area late at night when he had a three-second conversation with the passenger in a van. There is no evidence of an exchange of money or drugs. There is, in fact, no evidence of an exchange of any object. The fact that defendant's conversation was observed late at night in a high-crime area does not make it more likely than not that defendant had engaged in a drug transaction. As the Supreme Court commented in an analogous situation involving a defendant driving in a high-crime area late at night:

> "[The officer's] suspicions in this regard may have been an excellent guess—the kind resulting from a sixth sense that many officers develop over the years. But, again, there is no objective quality to them that entitles them to any weight, either individually or collectively, in the constitutional calculus. Neither the hour nor the 'high crime' nature of the area tells us whether *this* defendant is likely to be a criminal, unless there is some reason to think that everyone driving in that particular area at that time of night is up to no good * * *."

*State v. Bates,* 304 Or 519, 526, 747 P2d 991 (1987) (emphasis in original). Certainly, it is *possible* that defendant had engaged in a drug transaction. But the law requires more than a mere possibility. The totality of the circumstances must reveal a substantial basis for concluding that, "more likely than not," *this defendant* was involved in a drug transaction. On the evidence before us, we cannot arrive at such a conclusion.

The authorities on which the state relies bear out our analysis and our conclusion. In *Reid*, the officers received a complaint that drugs were being sold at a particular location. They received information from an informant that an individual matching the defendant's description had been selling drugs. The officers watched the location where the informant said the transactions had occurred. They saw the defendant approach a car, talk to the driver and then motion to a second individual to bring him an undiscernible item. The defendant exchanged that item for another and then walked off. On those facts, we concluded that the officers who arrested the defendant had probable cause to believe that he had engaged in a drug transaction. Among other things, we noted that the officers had received information that a person matching the defendant's description had been seen dealing in drugs at that location. In that context, coupled with the officers' observation of an actual exchange of goods, we concluded that the officers had a substantial basis for believing that the defendant, more likely than not, had committed a crime. *Reid*, 107 Or App at 355. In this case, Mahuna did not observe any sort of exchange as had occurred in *Reid*. Moreover, Mahuna had no information that defendant had been involved in drug transactions in the past, much less a description of an actual prior transaction at the location of the arrest, as in *Reid*.

In *Jones*, the officer involved was familiar with the defendant and knew that he sold small balloons containing drugs. When the officer saw the defendant walking down the sidewalk in his direction, the officer asked the defendant where he was going. The defendant pushed the officer away and thrust his right hand into his pants pocket. The officer grabbed the defendant's arm, pulled it out of the pocket and found a balloon that contained drugs. We held that, in the light of the officer's knowledge of defendant's *modus operandi* to keep drugs in balloons in his pocket, there was probable cause for the search and seizure. *Jones*, 9 Or App at 633. In this case, in contrast, Mahuna had no prior knowledge of any drug dealing *modus operandi*; he had no prior knowledge of defendant at all. He knew only that defendant was standing at a corner where other persons had been known to transact in drugs.

The dissent contends that the trial court erred in concluding that Mahuna lacked probable cause to arrest defendant. Relying principally on *State v. Mendoza*, 123 Or App 237, 858 P2d 1350 (1993), it argues that, although "the nature of the transaction may not be apparent to the less-experienced eye," Mahuna's experience and knowledge of the area support his conclusion that what he observed earlier in the evening was a hand-to-hand drug transaction. 146 Or App at 470. Certainly, as we have explained, an officer's training and experience are relevant to the determination of probable cause, and they may lead an officer subjectively to believe that a crime has been committed. But, to satisfy the probable cause requirement, those subjective beliefs must also be supported by facts that give rise to an objectively reasonable determination that a crime probably had been committed. *Bates*, 304 Or at 526. That is what is the trial court correctly concluded is lacking in this case.

*Mendoza* itself illustrates the point. In that case, the officers observed what the court characterized as "a classic hand-to-hand drug transaction": In an area known to be a site of frequent drug transactions, the defendant met with an individual while another appeared to act as a lookout, and the defendant made a "real clear exchange" of money for a small, light-colored package that "looked like the drug packets" that the officers had seen used in drug transactions in the area. *Mendoza*, 123 Or App at 239-40, 242. There is no such evidence in this case. In particular, there is no evidence of a "real clear exchange" of money for anything that "looked like * * * drug packets." In fact, Mahuna testified that he saw nothing exchanged at all. He saw only that defendant put his head and hand in the window of a van and then walked away with his hand in his pocket.

The state argues that, even if Mahuna lacked probable cause to believe that defendant had committed a crime, he had reasonable suspicion and, in the light of the limited intrusion involved in a pat-down, that should suffice. Such a frisk (defined in ORS 131.605(2) as "an external patting of a person's outer clothing"), however, is only authorized upon reasonable suspicion "that the person is armed and presently dangerous." ORS 131.625(1). Mahuna never testified that he conducted his pat-down for safety reasons, and the state does

not assert that he did so. The state nevertheless contends that, under *State v. Rhodes*, 315 Or 191, 843 P2d 927 (1992), we may permit searches to proceed on something less than probable cause if those searches are not unduly intrusive. We find no such holding in the *Rhodes* decision.

In *Rhodes*, an officer found the defendant passed out in the front seat of his truck with the engine running. The officer reasonably suspected the defendant of having committed the crime of driving under the influence. Such reasonable suspicion authorized the officer to stop the defendant. *See* ORS 131.615. In carrying out the stop, the officer attempted to attract the defendant's attention. Concerned that knocking on the window might startle the defendant and result in a sudden and dangerous reaction, the officer opened the truck door. The court held that the officer's action was a reasonable precaution to protect his own and the defendant's safety. *Rhodes*, 315 Or at 200. The court did not hold that, depending on the level of intrusiveness of a search, an officer may proceed on something less than probable cause.

Affirmed.

**EDMONDS, J.,** dissenting.

This is a case in which the majority holds that no probable cause existed to arrest defendant for possession and delivery of a controlled substance. Accordingly, it upholds the trial court's allowance of defendant's motion to suppress crack cocaine seized from him incident to arrest. I believe that the majority fails to take all of the pertinent facts properly into account and, as a result, that its analysis is faulty.

"Probable cause to arrest" requires in this case that there be a substantial objective basis for believing that, more likely than not, defendant delivered a controlled substance to an occupant of a vehicle. ORS 131.005(11). To determine whether probable cause exists, we look to the totality of circumstances existing at the time and the place where the officer acts. *State v. Rusnak*, 128 Or App 488, 876 P2d 848 (1994). Those circumstances include any reasonable inferences that can be objectively drawn, viewed in the light of the officer's experience. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). It is noteworthy that "[a]cts that might be viewed as

innocent or equivocal to a lay person may be incriminating when viewed by a trained, experienced police officer." *State v. Mendoza*, 123 Or App 237, 241, 858 P2d 1350 (1993).

The facts that could give rise to probable cause to arrest in this case are as follows. The arresting officer was driving to work in his personal car when he stopped for a red light at the intersection of Northeast Killingsworth and Albina streets in Portland. The officer testified that he was very familiar with that location. He had personally "made probably 30 arrests on that specific corner or within a one block radius of there" for crack cocaine in less than a four-month period of time. The Falcon Apartments are about one-half block from the corner. The officer testified on direct examination, "This is a high drug * * * area, numerous arrests on * * * these specific corners. There is drug activity big time in the Falcon Apartments." He elaborated:

"Usually [drug dealers] have a stash that is either within a bush or within an apartment nearby. On this specific corner, we have an apartment complex there called the Falcon Apartments. There are a lot of people who deal out of the apartment complex. That is a secured building. The police don't have keys to it.

"What people usually do, they go out if they want to make a deal, make a deal and take a very small quantity with them so it can be easily ditched or tossed so if they should be arrested, then only a small quantity would be taken. Once they make the deal, go right back to their stash."

After the officer testified about the number of arrests that he had made at the corner, he was asked:

"Q. You indicated to the court this is a bigger problem. Are there more arrests than that that occur there?

"A. There are arrests all day long, seven days a week there. It is a very active drug corner because of the apartment complex there. That is a kind of a safe haven for them. A lot of them live in there or have friends live in there who give them keys to get into the building."[1]

---

[1] At another point in his testimony, the officer was asked, "Is this kind of thing going on all night long with drug dealers?" The officer responded, "[T]wenty-four hours a day, seven days a week."

The officer was also asked about how drug sales typically occur at the corner.

"* * *[A] lot of hand to hand deals. North Portland because it is not so concentrated with people, you find a lot more vehicles coming into the area from different neighborhoods or whatever.

"People drive up to a corner to a person. They are flagged or they will flag somebody, ask for drugs. A lot of times they are taken around the corner, off of the main strip of Killingsworth. A lot of people don't like to do drug transactions on the corner there. They sometimes take them over a smaller side street where the deal is done again very quickly. Now a ten dollar rock or whatever is exchanged very quickly and the car drives off."

On the evening in question, the officer arrived at the corner at about 11:20 p.m. Defendant was standing on the corner near a bus shelter on the adjacent sidewalk about ten feet away from the officer's car. The officer testified that there is no other activity besides drug dealing that regularly occurs in front of the Falcon Apartments between 11:30 p.m. and 1:30 a.m. A nearby library is closed, and the last bus on West Killingsworth comes by at 9:26 p.m. Thus, the bus shelter is not in use at that time for public transit.

The officer was in plain clothes, driving his personal car. He pulled up at the intersection behind a full-sized van that was also stopped for the red light. As he watched:

"Passenger in the van—I think it is a woman has got her arm on the door and her head like this (demonstrating) and like she is saying something. I can't hear what it is but obviously gesturing."

The officer described what happened next:

"First contact he is standing—I think he is standing right in front of the bus shelter, right about there [referring to a diagram in court].

"So I see the person in the van head gesture. [Defendant] looks at him. He walks towards the van. About half way towards the van he stops. He looks both west and then he looks east up the street, and then he walks up to the van.

"* * * * *

"Q. [by the prosecutor] Was he walking out at that point to get to the van? Was there another lane of traffic there he had to look out for?

"A. No. This is the sidewalk right here [indicating on the diagram].

"Q. Your vehicles were parked right, stopped there next to the sidewalk?

"A. Yeah.

"Q. So no reason for him to look left and right to determine if someone was going to possibly run over him?

"A. No."

Also, there is no evidence of any pedestrian traffic on the sidewalk that impeded defendant's route in the ten to fifteen feet that he had to walk to get to the van.

In response to questioning by the prosecutor about what happened after defendant looked up and down the street, the officer testified:

"Q. As soon as he walked up the van, what happened?

"A. At this point, his hand and his head go into the window of the van. His arm is moving. His arm moves.

"Q. You couldn't see his hand?

"A. I couldn't see his hand. I could not see —

"Q. You could not see his face or what he was saying?

"A. No, I could not.

"Q. Okay. Then what happened?

"A. He is inside of the van with his head and his arm maybe three seconds. Real quick. He stops, turns, walked back this way. As he does—

"* * * * *

"As he does, his right hand, he goes into the right rear pant's pocket (demonstrating). He walks past the bus shelter. He pulls up his pants. At that point, the light is green, so we all drive away."

Based on those observations, the officer testified that he had seen a "hand to hand drug deal" similar to those

he had previously observed at that location and that, at that time, he believed he had probable cause to make an arrest. Because he was off-duty and had no "cover," he decided not to arrest defendant and proceeded to work. Later that night at about 1:30 a.m., he returned to the corner in uniform and in a marked patrol car. Again, he saw defendant standing on the corner by the Falcon Apartments. Based on what he had observed earlier in the evening and the fact that defendant was at the same location at that time, the officer placed defendant under arrest and searched him.

Whether "probable cause" to arrest exists in this case requires an *ad hoc* determination based on the totality of the particular surrounding circumstances. "Probable cause" is often more easily discerned by a comparison with what the concept does not embrace. On the one hand, probable cause does not require certainty or "proof beyond a reasonable doubt," which is necessary to convict an individual of a crime. *State v. Spicer*, 254 Or 68, 70, 456 P2d 965 (1969). On the other hand, probable cause to arrest requires more than finding a person in a location where a particular kind of crime is often committed. For instance, it could not be reasonably contended in this case that there existed probable cause to arrest defendant based only on the fact that he was standing outside the Falcon Apartments at 11:20 p.m. and 1:30 a.m. People are entitled to be evaluated based on their individual behavior, and not solely on the basis of their associations or their proximity to locations involving regular criminal activity. *State v. Baldwin*, 76 Or App 723, 729, 712 P2d 120 (1985), *rev den* 301 Or 193, 719 P2d 1304 (1986).

Here, the officer saw defendant engage in conduct that his training and experience taught him constituted a "hand to hand" drug delivery transaction. The fact that the nature of the transaction may not be apparent to the less-experienced eye is of no legal moment. This is not the first time that this court has considered whether the observation of a "hand to hand" drug transaction gives rise to probable cause to arrest even though a transaction may appear innocent to an uninformed bystander. In *Mendoza*, officers observed a hand-to-hand exchange of money for a small light-colored package after one of participants looked nervously in both directions. Because the area where the transaction was

observed was a heavy narcotic traffic area and the transaction was similar to the common pattern of drug transactions in that area, we held:

"The officers saw what their experience told them was a drug transaction. That was probable cause to arrest defendant, and the search incident to the arrest was lawful." 123 Or App at 242.

Nonetheless, the majority states in this case:

"There is no evidence of an exchange of money or drugs. There is, in fact, no evidence of an exchange of any object. The fact that defendant's conversation was observed late at night in a high-crime area does not make it more likely than not that defendant engaged in a drug transaction." 146 Or App at 463.

The majority's characterization of defendant's individualized actions as "no evidence" of an exchange is incorrect. As the defendant did in *Mendoza*, defendant looked up and down the street even though he had only to traverse ten to fifteen feet of the sidewalk in response to the gesture from the van. Defendant stuck his head and his hand inside the van for approximately three seconds and then walked away quickly. As part of the same motion, he withdrew his hand from the interior of the car and placed it into his right rear pocket, an action consistent with the receipt of something from the occupant of the car. Finally, he pulled up his pants as he walked away, an action also consistent with the placement of an object in the pocket. It is evident that defendant's motions with his hands was more than a mere conversation between defendant and the van occupant. Therefore, defendant's actions are some evidence that an exchange of objects took place.

The question then is whether the evidence of an exchange combined with the other circumstances, including the officer's experience in observing hand-to-hand drug deliveries in that locale, makes it more likely than not that the transfer involved controlled substances. Admittedly, the officer saw no money or package exchanged as was observed in *Mendoza*, but that fact does not necessarily defeat probable cause. The issue is whether on these facts, a person with the

officer's experience could reasonably conclude that the hand-to-hand exchange involved controlled substances. In the light of other possible explanations, it is more likely than not that when defendant's hand extended into the car and then was placed into his rear pocket, controlled substances were involved. The other possible explanations for defendant's actions are not readily consistent with his surveillance of the street before he approached the van and his continued presence between 11:20 p.m. and 1:30 a.m. at a location where drugs are sold seven days a week, twenty-four hours a day. There was no doubt in the officer's mind that he had witnessed a drug delivery, and the totality of the objective circumstances when viewed in the light of his experience reasonably support that conclusion.

For these reasons, I dissent.