Argued and submitted March 2, decision of the Court of Appeals and order of the circuit court reversed; case remanded to the circuit court for further proceedings April 9, 1998

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## STEVEN LAMONT MARTIN,
*Respondent on Review.*

(CC C95-03-31796; CA A88759; SC S44459)

956 P2d 956

**18**

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

David C. Degner, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With him on the brief was Sally L. Avera, Public Defender.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

GILLETTE, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case; Graber, J., resigned March 31, 1998, and did not participate in this decision.

## GILLETTE, J.

This is a criminal case in which defendant was charged with one count each of unlawful delivery and unlawful possession of cocaine, a controlled substance. ORS 475.992. Defendant filed a motion to suppress evidence, claiming that the charges against him were based on evidence seized in a warrantless search of his person and that the warrantless search was without probable cause. The trial court agreed and suppressed the evidence. The state appealed that pretrial order to the Court of Appeals. ORS 138.060(3). A divided panel of the Court of Appeals affirmed. *State v. Martin*, 146 Or App 459, 934 P2d 467 (1997). We allowed the state's petition for review and now reverse the decision of the Court of Appeals and the order of the trial court.

We take the facts from the majority opinion of the Court of Appeals, as supplemented by the dissent and the testimony of the arresting officer.[1]

"Around 11:20 p.m., Portland Police Officer Mahuna was driving to work in his personal car when he stopped at a red light at the intersection of Northeast Killingsworth and Albina Streets [in the City of Portland]. Immediately in front of his car was a van that also had stopped for the light. Mahuna could see both the driver and a passenger through a window in the back of the van. He also could see defendant standing near a bus shelter on the adjacent sidewalk, about ten feet away. The officer saw the passenger in the van gesture to defendant and say something to defendant, although he could not hear what the passenger said. Defendant looked to the left and to the right, stepped into the street and approached the van. Defendant put his head and one hand into the open passenger window for about three seconds. He then turned and walked away. Mahuna saw no money or any other objects exchanged. As defendant walked back toward the sidewalk, he put his right hand into his right rear pants pocket. Mahuna did not, however, see whether defendant put any object into his pocket. The

---

[1] Although it ruled against the state on legal grounds, the trial court stated on the record that, factually, it fully accepted the testimony of the state's police officer witness, Mahuna. We therefore examine the facts as testified to by Mahuna, including the inferences that reasonably may be drawn from those facts.

light then turned green, and both the van and Mahuna drove away. At that point, Mahuna believed that he had just witnessed a hand-to-hand drug transaction. In his experience, the area is a known location for such transactions; he had made numerous arrests for possession and delivery of a controlled substance at that very corner. Mahuna refrained from arresting defendant because he was not yet on duty.

"Two hours later, while on duty, Mahuna returned to the intersection of Northeast Killingsworth and Albina Streets. He saw defendant standing on the same corner. Mahuna stopped, got out of his car, approached defendant and told defendant to put his hands on his head. Defendant did so, while Mahuna patted down his right rear pocket. Mahuna felt an object in the pocket that he suspected was rock cocaine. He reached into the pocket and removed a plastic bag containing what appeared to be cocaine. Mahuna then arrested defendant * * *."

146 Or App at 461-62.

In addition, the following facts are important: The bus stop was a place at which, according to Mahuna, drug dealing was going on "twenty-four hours a day, seven days a week." Such intense commercial activity was made possible by the fact that the bus stop was only one half-block from an apartment complex that served, again according to Mahuna, as a kind of "safe haven" for drug dealers, who either live in or have keys to the complex. Mahuna explained that a dealer typically would keep a significant store of drugs in the complex, but would venture onto the street with only a small amount, because in an emergency it would be easier to quickly dispose of such an amount. Once they made a sale, Mahuna testified, dealers would return to the complex to obtain more drugs and go through the same process again.

Mahuna also testified that many "hand-to-hand" drug sales occurred at the location of the bus stop. The transactions, which took only a few seconds, would occur either at the corner or around the corner and part way down a side street. Mahuna explained that "a lot" of people did not like to conduct their drug transactions on Killingsworth, which is a major arterial street in the area.

Finally, Mahuna testified that, although he did not actually see anything pass to or from defendant's hand when defendant reached inside the van, what he saw was consistent with other "hand-to-hand" drug transactions that he had observed at that very corner.

As noted, defendant moved to suppress the evidence seized from him. The trial court granted the motion, ruling that, although Mahuna believed that he earlier had observed a drug transaction, that belief was not objectively reasonable, without some observation that defendant actually had exchanged something tangible with someone in the van.

On the state's appeal, the Court of Appeals characterized Mahuna's actions in his encounter with defendant as an arrest. 146 Or App at 462-63. We agree. The Court of Appeals then concluded, however, that Mahuna did not have probable cause to arrest defendant. *Id.* at 463. For the reasons that follow, we disagree with that conclusion.

Under ORS 133.310(1)(a), an officer may arrest a person without a warrant "if the officer has probable cause to believe that the person has committed * * * [a] felony." The amount of objective knowledge required to provide "probable cause" to make such an arrest is defined in ORS 131.005(11): An arresting officer has probable cause to arrest if "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." Those statutory standards are met in this case.

Relying on his previous experience, Mahuna testified that: (1) due to the availability of a "safe haven" for dealers in a nearby apartment complex, drug transactions were occurring at the location of the bus stop on a more-or-less continuous basis; (2) defendant was at that location late at night, with no other apparent purpose for being there; (3) when hailed by the occupant of the van, defendant looked both up and down the street before going to the van, as if to assure that he would not be observed closely when he reached it; (4) defendant's interaction with the occupants of the van was consistent with a "hand-to-hand" drug transaction, considering its duration, intensity, furtiveness, and defendant's apparent pocketing of something immediately afterward;

(5) defendant was back at his post later that same evening, reinforcing the belief that he was dealing drugs on the corner.

From Mahuna's testimony, we have no difficulty concluding that he subjectively believed that defendant had committed a crime. Under the totality of the circumstances, we further conclude that Mahuna's belief was objectively reasonable. Especially significant, in our view, is the fact that defendant was back at the corner two hours after his encounter with the van. Given all that Mahuna already had witnessed and the specific nature of that location as a drive-up drug dispensing location near "crack central," it was more likely than not that defendant was dealing drugs at that corner and was, when Mahuna saw him the second time, actually in possession of drugs. It follows that Mahuna had probable cause to arrest defendant and that the ensuing seizure of drugs from defendant was lawful as a seizure incident to the arrest.

■      The Court of Appeals' contrary conclusion in this case appears to have turned, at least in part, on the failure of Mahuna actually to see anything in defendant's hand during the encounter with the van. 146 Or App at 465. But seeing something in a suspected dealer's hand cannot be the *sine qua non* of probable cause, any more than any other single fact. The fact that a drug transaction was occurring could be inferred from the totality of the circumstances surrounding the event. Ultimately, the question in every case is whether the totality of the circumstances, *i.e.*, the direct evidence and the inferences that fairly may be drawn from that evidence, establish probable cause. As we have explained, the evidence and inferences in this case readily fulfill that role.

The Court of Appeals' majority relied on this court's opinion in *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), as supporting the opposite conclusion. In *Bates*, the defendant was stopped for a traffic infraction late at night in an area characterized (without elaboration) by one of the arresting officers as a "high crime residential" area. A television and a videocassette recorder were in plain view in the defendant's car. Although the defendant produced a valid Washington driver's license, the officers were suspicious. Seeing the end of "some kind of a bag" on the floor beneath the defendant's

feet, the officers asked the defendant to pull the bag from between his feet so that the officers could see what it was. When the defendant did not comply, one of the officers drew his service revolver, ordered the defendant to get out of his car, and seized the bag. The bag contained drugs and ammunition; a further search of the car disclosed a loaded handgun. The defendant was convicted of possessing the drugs and the gun. The Court of Appeals affirmed without opinion. *State v. Bates*, 85 Or App 428, 736 P2d 629 (1987).

On review, this court reversed. The *Bates* court addressed each of the objective facts that was relied on by the arresting officers but concluded that, whether considered alone or together, those facts did not justify the officer's search of the defendant's car. As most pertinent here, the Court of Appeals' majority relied on the following passage from *Bates:*

> " '[The officer's] suspicions in this regard may have been an excellent guess—the kind resulting from a sixth sense that many officers develop over the years. But, again, there is no objective quality to them that entitles them to any weight, either individually or collectively, in the constitutional calculus. Neither the hour nor the "high crime" nature of the area tells us whether *this* defendant is likely to be a criminal, unless there is some reason to think that everyone driving in that particular area at that time of night is up to no good * * *.' "

*Martin*, 146 Or App at 463 (citing *Bates*, 304 Or at 526) (emphasis in original).

This court continues to adhere to the analysis and principles set forth in *Bates*. This case, however, is different. The key contrast between the facts in *Bates* and the facts in this case is that, as we have explained, there *is* abundant evidence, all of which we have summarized, that creates probable cause to believe that "this" defendant was engaged in criminal activity. The arresting officer in *Bates* acted—so far as that record disclosed—on the basis of a suspicion, *i.e.*, a hunch. Here, both Mahuna's observations and his conclusions, filtered through the lens of his experience, are shown in his testimony to be objectively reasonable. That difference dictates the difference in outcome between the two cases.

The decision of the Court of Appeals and the order of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.