Argued and submitted June 30, reversed and remanded September 2, 1998

STATE OF OREGON,
*Appellant,*

*v.*

WENDE A. HAMMONDS,
*Respondent.*

(96-11-38355; CA A98063 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

DARRYL W. DESHLER,
*Respondent.*

(96-11-38356; CA A98064)
(Cases Consolidated)

964 P2d 1094

Holly A. Vance, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Andy Simrin, Deputy Public Defender, argued the cause for respondent Hammonds. With him on the brief was Sally L. Avera, Public Defender.

No appearance for respondent Deshler.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

The state challenges a trial court order suppressing statements made by defendants after the car in which they were traveling was pulled over for a traffic infraction. Specifically, the state contends that, because the officer who stopped defendants reasonably suspected that they had committed or had agreed to commit the crimes of prostitution and promoting prostitution, he was authorized to expand the scope of the traffic stop to investigate those crimes. Hence, the trial court erred in suppressing the statements obtained as a result of the expansion of the traffic stop. We agree.[1]

Although it ruled against the state on legal grounds, the trial court stated on the record that there appeared to be no dispute over the facts of the case and that it fully accepted the testimony of the state's police officer witness, Kelly. We therefore examine the facts as testified to by Kelly, including those inferences that reasonably can be drawn from those facts. *State v. Martin*, 327 Or 17, 19 n 1, 956 P2d 956 (1998).

At the hearing on the motion to suppress, Kelly testified that, in the early morning on November 1, 1996, he had been patrolling in Portland's Northeast Precinct. Kelly had been a police officer for the City of Portland for nine years and had spent three and one-half of those years as a vice officer. At approximately 4:00 a.m., Kelly was driving on North Vancouver Street near Portland Boulevard when he noticed a van heading southbound on Vancouver. The van's left turn indicator was flashing, but the van turned right. Kelly followed the van and signaled for it to pull over. After the van pulled over, Kelly approached the driver's side door. As he approached the door, he noticed the driver fumbling with the waistband of his trousers.[2] Kelly also noticed that there was

---

[1] The parties do not dispute that the stop was a valid traffic stop or that the officer expanded the scope of that stop when he questioned defendants about their activities. The only issue on appeal is whether the officer was justified in expanding the scope of the traffic investigation.

[2] Kelly first stated that the driver "was adjusting his trousers. I couldn't really tell if he was actually just zipping up his pants or buttoning them or fastening the belt, but both his hands were occupied fastening his pants." He later testified that the driver "was kind of furiously working with his pants as I approached." During argument on the motion, the trial court stated that it found the officer credible and, therefore, "[i]f he says in his opinion the guy was making frantic movements around his pants, then I accept that it's true."

a woman passenger (defendant Hammonds), and that both she and the driver seemed nervous. He could smell alcohol on the driver's breath. On the front seat of the van next to the driver, and on the floor of the driver's side, Kelly saw magazines that he described as "pornographic," depicting pictures of naked women.[3] Kelly testified that the area in which the van had been driving was "a primary part of town where prostitutes take their johns to perform sex."

Kelly testified that, based on his experience as a vice officer, those observations, taken together, had led him to believe that defendants were engaged in an act of prostitution. He asked the driver to get out of the van and walked him around to the back of it, where he questioned him about his activities. The driver eventually told him that he had picked up the woman "to date" and that he was going to give her fifty dollars to have sex. Kelly then spoke with the woman, who told him that the driver was going to pay her to introduce him to two other women for sex.

■ Relying on *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995), the trial court ruled that the defendants' statements, although voluntary, had to be suppressed because Kelly was not justified in expanding the scope of the traffic stop. In *Dominguez-Martinez*, the court held that

> "an officer who stops a person for a traffic infraction may investigate only that infraction, unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation."

321 Or at 212. In *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996), this court determined that the proper standard for permitting an officer to expand the scope of a traffic infraction investigation was reasonable suspicion of other criminal conduct. Reasonable suspicion is defined by ORS 131.605(5) as "a belief that is reasonable

---

[3] The record does not indicate what magazines, specifically, were in the van. Kelly first described them as "pornographic" and affirmed that they depicted naked women. At a later point Kelly referred to the magazines as *"Playboy* or whatever kind of magazine pictures." There is no indication in the record whether the magazines were, actually, *Playboy* magazines or some other, more explicit, publication. We conclude, nevertheless, that the actual publication title is not important and that the only relevant fact is that Kelly had recognized the magazines as having sexual content.

under the totality of the circumstances existing at the time and place the police officer acts." The standard has both a subjective and an objective component. The officer must "subjectively believe that the person stopped has committed a crime" and that belief must be objectively reasonable considering the totality of the circumstances. *State v. Belt*, 325 Or 6, 11, 923 P2d 1177 (1997).

Here, Kelly testified that he believed that defendants had engaged in an act of prostitution, so the first part of the test is satisfied. The issue that remains is whether that belief was objectively reasonable. To establish that, Kelly had to identify specific and articulable facts giving rise to a reasonable inference that defendants had committed a crime. *Aguilar*, 139 Or App at 182. The state contends that Kelly's observations were sufficient to establish that his belief that defendants had engaged in an act of prostitution was reasonable. It argues that the trial court erred in ruling that, because there could have been an innocent explanation for defendants' conduct, the facts did not support a reasonable suspicion of criminal conduct. We agree with the state.

In ruling on the motion, the court commented:

"As I indicated to the prosecutor, I think that in a drug case a similar series of events which we've [described] here would probably get me to find probable cause.[4] * * * My big problem with sex cases versus drugs or DUII is that there is a non-paid explanation for sexual activity between two people[.]"

We have previously held that the fact that there are possible lawful explanations for behavior does not mean that the behavior may not give rise to a reasonable suspicion of criminal conduct. *State v. Crites*, 151 Or App 313, 316, 948 P2d 757 (1997), *rev den* 327 Or 82 (1998). It is true that it is possible that the couple in the van were engaging in sexual activity that was not based on an exchange of money. That is not dispositive—it is also true that, given Kelly's experience, the time and location of the stop, the driver's nervousness and

---

[4] During argument, the trial court had posed a hypothetical in which a driver is stopped in an area known for drug transactions, is nervous, has issues of *High Times* magazine in the car and has made furtive movements.

the presence of the pornographic magazines, it was reasonable to suspect that an act of prostitution had taken place or that defendants had taken steps to commit one.

■ It is also unclear whether the trial court was evaluating the facts under the proper standard. Not only did the court speak of *probable cause* while discussing its findings, at one point it stated that "adjusting the belt is suspicious but not conclusive." Reasonable suspicion does not require that the articulable facts as observed by the officer *conclusively* indicate illegal activity but, rather, only that those facts support the *reasonable inference* that a person has committed a crime. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993).

Defendants nevertheless argue that, as a matter of law, without some evidence of money having changed hands, Kelly could not have inferred from his observations that an act of prostitution had taken place. We disagree. In *Martin*, the Supreme Court held that an officer had probable cause to conclude that a drug transaction had taken place when the officer watched the defendant reach inside a van that had stopped where the defendant was standing, even though the officer did not see anything pass to or from the defendant's hand. 327 Or at 22. The officer testified that the defendant had been standing at a bus stop known for narcotics trade; that it was late at night; that the defendant had attempted to avoid observation; and that the defendant's interaction with the occupants of the van was consistent with a drug transaction. *Id.* at 21. The court reasoned that the combination of factors to which the officer had testified supported a finding of probable cause to believe that a crime had been committed. *Id.* at 22. The court factored in the officer's experience and determined that, *under the totality of the circumstances*, his belief that a crime had been committed was objectively reasonable.

Although that case involved probable cause, the court's reasoning—that the ultimate question in every case is whether the totality of the circumstances, *i.e.*, the direct evidence and *the inferences that may fairly be drawn from that evidence*, establishes the requisite standard—is equally applicable to cases involving the lower standard of reasonable suspicion. Accordingly, we conclude that, although there

was no direct evidence of an exchange of money for sex, the hour, the location, and defendants' behavior, viewed through the lens of Kelly's experience, support the existence of reasonable suspicion. Hence, the trial court erred in suppressing defendants' statements.

Reversed and remanded.