Argued and submitted November 6, 2002, at Lewis and Clark School of Law, reversed and remanded July 30, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# ROGER MILLEN POLLOCK,
*Respondent.*

## 0103-32263; A116427

73 P3d 297

Douglas M. Petrina, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General.

Stephen A. Houze argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

The state appeals from a pretrial order suppressing evidence. The trial court ruled that defendant's offer to sell two women a controlled substance was insufficient to establish probable cause to believe that he attempted to transfer the controlled substance to them. We reverse and remand.

We state the facts consistently with the trial court's written findings. On March 28, 2001, Officer Brian Hubbard was on patrol in Old Town in Portland. At approximately 1:00 a.m., Iran Johnson flagged Hubbard down. Johnson told him that "[a] gal at Fourth and Burnside was sick and had possibly been given drugs by a guy at Dante's," a local bar. Hubbard spoke with the woman, Katie Andersen, who appeared to be sick. Her hands were shaking, her head was down, and she showed signs of being nauseated. Andersen and a friend, Greer Carver, "told [Hubbard] that a guy in Dante's tried to sell them ecstasy[1] and offered to put it in their drinks. They told the officer that they declined and, 'after persisting a bit, he left.' When Andersen started feeling bad, she thought that he might possibly have put the drug in her drink."

Johnson told the officer that he knew who the man was and where he was sitting in the bar. "He described him as a big blond guy and told the officer that he had seen him with the women in the bar and that he had 'kept an eye on him.'" Johnson, however, had not seen the man put anything in Andersen's drink. Based on what he learned from Andersen, Carver, and Johnson, the officer entered Dante's and, after Johnson pointed defendant out, placed him under arrest. During a search incident to arrest, the officer found what appeared to be a controlled substance and over $2,000 in cash on defendant.

Defendant moved to suppress the evidence found during the search incident to arrest. He reasoned that, because the officer lacked probable cause to arrest him, the evidence resulting from the arrest should be suppressed. The

---

[1] "Ecstasy" is the colloquial name of a Schedule I controlled substance, 3,4-methylenedioxy methamphetamine (MDMA). *See* OAR 855-080-0021(3)(j).

state responded that the officer had probable cause to believe that defendant had put ecstasy in Andersen's drink. Alternatively, it contended that defendant's offer to sell the two women ecstasy, which the women had refused, gave the officer probable cause to believe that defendant had attempted to transfer ecstasy to them.

Regarding the state's initial argument, the trial court ruled that the evidence that defendant had put ecstasy into Andersen's drink was "extremely weak." No one had seen defendant put anything into Andersen's drink, and Andersen's physical symptoms provided little reason to think that she was under the effects of ecstasy. Her symptoms were instead consistent with alcohol intoxication. Regarding the state's alternative argument, the court explained that "the evidence was believable that there was an offer to sell drugs to the victim in this case." The court reasoned, however, that an offer to sell a controlled substance is, standing alone, insufficient to establish probable cause to believe that an attempted transfer has occurred. Having found that the officer lacked probable cause to arrest defendant, the court suppressed the evidence found during the search incident to arrest. The state appeals from the trial court's pretrial order.

We begin from settled principles. An officer may arrest a person without a warrant "if the officer has probable cause to believe that the person has committed * * * [a] felony." ORS 133.310(1)(a); *State v. Martin*, 327 Or 17, 21, 956 P2d 956 (1998). An officer has probable cause to arrest if "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11); *Martin*, 327 Or at 21. Finally, under the Oregon Constitution, probable cause has both a subjective and an objective component. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). In this case, the trial court did not find that the officer lacked subjective probable cause, nor does defendant argue that point in support of the court's ruling. Rather, the court based its ruling on the ground that there was no objective basis to believe that it was more likely than not that defendant attempted to transfer ecstasy to Andersen. In reviewing that issue, the trial court's factual findings are binding on appeal as long as they are supported by evidence. The question, however,

whether the officer reasonably believed that it was more likely than not that a crime occurred presents a question of law.

■ ■ We agree with the trial court, for the reasons it stated, that the officer lacked probable cause to believe that defendant had transferred a controlled substance by putting ecstasy into Andersen's drink.[2] We accordingly turn to the question whether defendant's offer to sell Andersen and Carver ecstasy gave the officer probable cause to believe an attempted transfer had occurred. When, as in this case, an officer makes a warrantless arrest based on information from another person, the question whether the officer had probable cause entails two issues. The first is whether the information was sufficiently reliable to establish probable cause. If it was, the remaining issue is whether the information establishes probable cause to believe that a crime has occurred. More specifically, the issue in this case is whether an offer to sell a controlled substance is sufficient to establish an attempted transfer of that substance.

■ In determining whether information from third persons is sufficiently reliable to establish probable cause, we look to the totality of the circumstances, including the citizen's reliability and basis of knowledge. *State v. Rasheed*, 128 Or App 439, 442, 876 P2d 859, *rev den*, 320 Or 131 (1994); *see State v. Pelster/Boyer*, 172 Or App 596, 602, 21 P3d 106, *rev den*, 332 Or 632 (2001) (employing the same test to evaluate the sufficiency of a warrant based on information from a named informant). Here, the officer relied on information that Andersen, Carver, and Johnson told him. All three were named citizens, who are presumed to be credible and reliable because they are subject to civil liability for giving false information. *State v. Lichty*, 313 Or 579, 585, 835 P2d 904 (1992) (explaining the holding in *State v. Montigue*, 288 Or 359, 605

---

[2] The trial court observed that Andersen identified no basis other than the sudden onset of her physical symptoms for suspecting that defendant had put ecstasy into her drink. As the trial court also found, however, Andersen's symptoms were consistent with alcohol intoxication, and the officer did not testify to any knowledge of ecstasy or its effects that would give him probable cause to believe that her symptoms were attributable to ingesting ecstasy. We agree with the trial court that, on this record, the officer lacked probable cause to believe that a completed transfer had occurred.

P2d 656 (1980)). Moreover, as the trial court found in this case, two people—Andersen and Carver—told the officer the same information. Additionally, a third witness Johnson corroborated some of the details that Andersen and Carver gave the officer.[3] Finally, the information that Andersen and Carver gave to the officer was based on their own personal knowledge. The information was sufficiently reliable to provide a basis for the officer's probable cause determination.[4]

■■     The remaining question is whether an offer to sell a controlled substance is sufficient to establish an attempted transfer of that substance. On that point, we note that the prohibition against the delivery of a controlled substance applies to attempted as well as completed transfers. *See* ORS 475.992 (prohibiting the delivery of controlled substances); ORS 475.005(8) (" 'delivery' means the actual, constructive or attempted transfer * * * from one person to another of a controlled substance"). When the state relies on an attempted transfer to prove delivery, it must show that the defendant "intentionally engage[d] in conduct which constitutes a substantial step toward commission of [a completed transfer]." ORS 161.405(1); *see State v. Boyd*, 92 Or App 51, 53-54, 756 P2d 1276, *rev den*, 307 Or 77 (1988).

■     We conclude that offering to sell a controlled substance constitutes a substantial step toward a completed transfer of that substance. As the court explained in *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991), " 'to be a substantial step the act must be "strongly corroborative of the actor's criminal purpose," ' * * * *i.e.*, [the] defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." (Citations omitted.) An offer to sell a controlled substance meets the two-part test the court identified in *Walters*. It "substantially advances" the goal of completing the transaction. *See id.* An offer to sell goes beyond mere preparation and shows a commitment to completing the

---

[3] Johnson confirmed that Andersen and Carver had been talking with defendant in Dante's and was able to describe and then identify for the officer the person whom he had seen talking with the two women.

[4] Indeed, the information on which the officer based his probable cause determination was sufficiently reliable under the *Aguillar/Spinelli* test. *See Montigue*, 288 Or at 362-63.

transfer if the offer is accepted. Additionally, the offer "provide[s] some verification of the existence of [defendant's criminal] purpose." *See id.* Taking defendant at his word, he would have immediately transferred the ecstasy to Andersen and Carver if they had accepted his offer. At a minimum, the officer reasonably could conclude from defendant's offer to sell a controlled substance that it was more likely than not that he had intentionally taken a substantial step toward the completed transfer of that substance.

Defendant argues, however, that Officer Hubbard lacked probable cause for three reasons. He argues initially that the variation in Andersen's statements to the officer undermines her reliability. Andersen made two statements to the officer. First, Andersen "told the officer that a guy in Dante's tried to sell [her and Carver] ecstasy and offered to put it in their drinks." Second, she told him that, after she and Carver persuaded defendant to stop trying to sell them ecstasy, she became sick, "leading her to believe that [defendant] had possibly given her ecstasy because she suddenly just didn't feel good." The inference that Andersen drew from the sudden onset of her illness may have been incorrect. But the fact that Andersen drew an unwarranted inference from the facts provides no reason to question her and Carver's reliability.[5]

Defendant advances a second argument. He does not dispute that an offer to sell controlled substances constitutes a substantial step toward a completed transfer. Rather, he relies on our opinion in *Boyd* and the cases following it to argue that evidence of possession is necessary to prove an attempted transfer of a controlled substance. Defendant reads those cases for more than they are worth. The question in *Boyd*, and the cases following it, was whether an attempted transfer could be inferred from the possession of

---

[5] Defendant argues that Andersen made a third statement to the officer. Citing page 40 of the transcript, he contends that, in addition to the two statements noted above, "complainant indicated that she had been 'given' drugs by a patron at Dante's." The statement that defendant cites was made by Johnson, not Andersen. Johnson told the officer that "[a] gal at Four[th] and Burnside was sick and had possibly been given drugs by a guy at Dante's." Even if Johnson were repeating what Andersen had told him, any variation in Johnson's report does not undermine Andersen's credibility. Beyond that, Johnson's report of Andersen's statement is consistent with what Andersen said to the officer.

large quantities of a controlled substance, inconsistent with personal use, and other indicia of drug trafficking. *See, e.g., State v. Garcia*, 120 Or App 485, 487-88, 852 P2d 946 (1993); *State v. Fulmer*, 105 Or App 334, 337, 804 P2d 515 (1991); *Boyd*, 92 Or App at 54. In those cases, intent to transfer had to be inferred from circumstantial evidence. Here, defendant's intent is explicit. He offered to sell drugs to Andersen and Carver, or so they reported.

*Boyd* and its progeny neither hold nor suggest that there is only one way in which to establish an attempted transfer or that proof of possession is necessary to prove that crime. *Cf. Martin*, 327 Or at 22 (explaining that "seeing something in the suspected dealer's hand cannot be the *sine qua non* of probable cause, any more than any other single fact"). Consistently with that understanding of *Boyd*, we have recognized that a defendant may be guilty of an attempted transfer of controlled substances without any evidence of possession. *State v. Sargent*, 110 Or App 194, 198, 822 P2d 726 (1991).[6] Defendant's second argument provides no reason to say that the officer, when presented with defendant's explicit offer to sell drugs, lacked probable cause.

A final theme runs through defendant's argument. He suggests that the officer's failure to take additional steps to corroborate what Andersen and Carver told him means that he lacked probable cause. Defendant identifies no authority for that proposition, however. Here, two reliable named citizens reported their first-hand observations of defendant's conduct to the officer, which gave the officer probable cause to believe that defendant had committed a crime. At that point, the officer had authority to arrest defendant. To be sure, the officer could have declined to arrest defendant at that point and could have sought additional

---

[6] We explained in *Sargent*:

"[I]f a person solicits another to engage in conduct constituting an element of the crime of delivery, *e.g.*, to provide to the person a controlled substance for the purpose of distribution to third parties, the person has taken a substantial step toward committing the crime of attempted delivery under ORS 475.992(1)."

110 Or App at 198. Although defendant argues that our reasoning in *Sargent* is limited to agreements with third parties, he identifies no principled reason for reading our decision that narrowly.

information. *See State v. Dinsmore*, 182 Or App 505, 513, 49 P3d 830 (2002). But the decision not to undertake an additional investigation does not somehow negate the probable cause that the officer already possessed. Because the officer had probable cause to arrest defendant, the evidence found during the search incident to arrest should not have been suppressed.

Reversed and remanded.