No. 570 June 24, 2026 795

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

BRYON CODY SUING,
*Defendant-Respondent.*

Crook County Circuit Court
23CR01929; A184459

Annette C. Hillman, Judge.

Argued submitted April 23, 2026.

Kyleigh Gray, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Peter Klym, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest D. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In this prosecution for driving under the influence of intoxicants (DUII), ORS 813.010, the state appeals a pretrial suppression ruling. The state contends that the trial court erred in concluding that the arresting officer lacked probable cause to arrest defendant. We agree and, accordingly, reverse and remand for further proceedings.

On December 31, 2022, a security guard at St. Charles Hospital called 9-1-1 to report that an impaired patient had driven away from the hospital, heading north on Combs Flat Road. Officer McKenna was dispatched. Unable to locate the vehicle, McKenna called the security guard, who identified defendant by name and described him as unsteady on his feet, smelling of alcohol, and "obviously drunk." She told McKenna that she saw defendant "drive a white Dodge pickup from the parking lot, after being advised not to drive by medical professionals." McKenna used defendant's name to get the registration address for a white Dodge truck, went to that address, and found a white Dodge truck in the driveway that was emanating heat from its hood.

McKenna knocked on the door of the residence, which led to his interacting with defendant. The initial interaction was on the unlit front porch, where defendant stood in his underwear, unbothered by the 31-degree temperature. McKenna advised defendant of his *Miranda* rights and then questioned him. Defendant confirmed that he had been at the hospital and said that he had been home for 30 minutes. He denied taking any medication but said he drank a shot of whiskey upon arriving home. Defendant's speech was slow but not particularly slurred. The conversation moved indoors, where the lighting was better, and McKenna observed that defendant had glassy, slightly bloodshot eyes. He also could smell alcohol on defendant's breath. In McKenna's training and experience, a single whiskey shot would not account for the signs of impairment that he observed. Defendant declined to perform field sobriety tests (FSTs). Believing he had probable cause, McKenna arrested defendant for DUII.

Before trial, defendant moved to suppress evidence obtained following his arrest, contending that McKenna lacked probable cause to arrest him.

Article I, section 9, of the Oregon Constitution establishes the right of the people to be secure from "unreasonable search, or seizure." A police officer may arrest a person without violating that right if the officer has probable cause to believe that the person has committed a crime. ORS 133.310(1). Probable cause exists if the officer has "a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11). Thus, there is both a subjective and an objective component to probable cause. "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986).

Here, the trial court found that McKenna subjectively believed that it was more likely than not that defendant had committed DUII, but it concluded that such belief was not objectively reasonable, and it therefore ordered suppression. The court focused particularly on the fact that McKenna did not see defendant driving and that McKenna did not ask defendant whether he drank any alcohol prior to the whiskey shot at home. It also noted that the whiskey shot at home could explain defendant's bloodshot eyes and the odor of alcohol that McKenna discerned. In the court's view, the hospital security guard's report was enough to create reasonable suspicion, but that report combined with what McKenna personally observed was not enough to give rise to probable cause.

The issue on appeal is whether the trial court erred as to the objective component of probable cause. On that issue, "the totality of the circumstances" must be considered. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). The question is whether the officer had sufficient information to make it objectively reasonable to believe that it was "more likely than not that defendant drove while he was physically or mentally impaired." *State v. Sinkey*, 303

Or App 673, 678, 465 P3d 284 (2020). In answering that question, we rely on the trial court's express and implied findings of historical fact, so long as there is constitutionally sufficient evidence to support them, and we review for legal error. *State v. DeJong*, 368 Or 640, 643, 497 P3d 710 (2021); *State v. Sullivan*, 322 Or App 563, 564, 520 P3d 911 (2022), *rev den*, 370 Or 827 (2023).

As a preliminary matter, we note that the trial court suppressed the evidence of defendant's refusal to perform FSTs on a separate ground, that ruling is not challenged, and the state does not rely on the refusal to perform FSTs in arguing probable cause.

The question then is whether McKenna's belief that it was more likely than not that defendant had driven under the influence of intoxicants was objectively reasonable given the totality of the circumstances, including what the hospital security guard told him, what defendant told him, and what he personally observed.

A key point of dispute on appeal relates to whether the hospital security guard saw defendant drive away from the hospital—or, more precisely, whether she reported to the police that she saw defendant drive away from the hospital. The trial court's findings on that issue of historical fact are binding on appeal, *DeJong*, 368 Or at 643, but the court made some seemingly contradictory findings in its letter opinion, resulting in a dispute on appeal regarding the found facts.

It is clear from the letter opinion that the trial court credited McKenna's testimony regarding what the security guard reported. We also understand from the letter opinion that the trial court viewed the security guard's report as sufficiently reliable to be considered in the probable cause analysis. *See State v. Pollock*, 189 Or App 38, 42, 73 P3d 297 (2003), *aff'd on other grounds*, 337 Or 618, 102 P3d 684 (2004) (recognizing that information received from third parties contributes to probable cause only if it is "sufficiently reliable" and identifying factors relevant to reliability). With that in mind, we address the trial court's factual findings.

Finding No. 1 includes a finding that, when the security guard called 9-1-1, she reported "that a patient had driven away from the hospital." Finding No. 3 includes a finding that McKenna "was dispatched on a call of a suspected DUII driver heading north on Combs Flat [Road]" and that, when McKenna spoke by phone with the security guard who made the report, "[t]he security guard told Officer McKenna that *** [she] observed [defendant] drive a white Dodge pick-up out of the parking lot after being advised not to drive by medical professionals." It is undisputed that those findings are supported by evidence admitted at the suppression hearing. The question is what to make of Finding No. 4, which states, "No driving was observed by the security guard or police officer. No calls or reports were received by law enforcement."

Taken literally, Finding No. 4 is not supported by the record and, as such, is not binding for purposes of appeal. *DeJong*, 368 Or at 643. McKenna testified that he did not personally see any driving, so that part of the finding is supported. As for the rest of it, McKenna testified that the security guard did not report seeing defendant driving *badly* and that no *other* reports or calls came in about defendant's driving.[1] It may be that the trial court meant to refer to that testimony. But to the extent that the court intended to find that *the security guard* did not observe defendant

---

[1] Immediately after McKenna testified that the security guard told him she saw defendant drive out of the hospital parking lot in a white Dodge pickup truck, he was asked and answered the following questions:

"Q. And anywhere does she indicate that she—besides seeing him pull out of the drive in the parking lot, that she saw any bad driving?

"A. From a position in St. Charles, it would be—

"Q. It's just a yes or no.

"A. No, she didn't.

"Q. Okay. And did anyone else report seeing [defendant] driving that night?

"A. No. We had no other calls.

"Q. Okay. So there's no report of his driving at all?

"A. No."

In isolation, the last question and answer could be read to mean that no one reported seeing defendant driving at any point, but, in context, it can only be read to mean that no one reported defendant's driving after he left the hospital parking lot.

driving and that *no one* (not even the security guard) reported defendant, that finding is not supported by any evidence. It also contradicts the court's other express findings, which are supported by evidence, most notably the very specific finding that the security guard told McKenna that she saw defendant drive out of the parking lot in a white Dodge truck.

Accordingly, for purposes of the probable-cause analysis, we understand the trial court to have found as historical fact that the hospital security guard told dispatch that a patient "had driven away from the hospital" and was heading north on Combs Flat Road and then told McKenna in a follow-up call that she "observed [defendant] drive a white Dodge pick-up out of the parking lot after being advised not to drive by medical professionals." Our resolution of that issue disposes of most of defendant's arguments on appeal, which depend on the trial court having found that the security guard did *not* see defendant drive away from the hospital. The only remaining issue is whether the information that McKenna had did not rise to the level of probable cause due to McKenna having not asked defendant about alcohol consumption other than the whiskey shot and because the whiskey shot could explain the signs of intoxication that McKenna observed at defendant's residence. We conclude that that is not the case.

The totality of the circumstances made it objectively reasonable for McKenna to believe that it was more likely than not that defendant had committed DUII when he drove home from the hospital. McKenna received a credible report from a hospital security guard that defendant was unsteady on his feet, smelled of alcohol, and was "obviously drunk" when he left the hospital; that medical professionals told him not to drive; and that the security guard saw him drive out of the parking lot in a white Dodge pickup heading north on Combs Flat Road. McKenna corroborated that defendant owned a white Dodge pickup, which was parked in defendant's driveway and still emanating heat when McKenna arrived, and defendant admitted that he had come home from the hospital 30 minutes earlier. McKenna also personally observed signs of intoxication, which he perceived

to exceed what could be explained by a single shot of whiskey, and which corroborated the security guard's report that defendant was "obviously drunk" when he left the hospital, making it less likely that defendant's appearance was due to one recent whiskey shot at home. *See State v. Foster*, 350 Or 161, 173, 252 P3d 292 (2011) ("[A]n observation made by police that is consistent with criminal conduct does not have to eliminate any possibility of an innocent explanation to provide probable cause. Probable cause depends on whether an incriminating explanation remains a probable one, when all of the pertinent facts are considered." (Internal citation omitted.)).

This case is distinguishable from *Sinkey*, on which defendant relies, both because the security guard provided more information than the caller in that case and because McKenna obtained corroborating evidence before arresting defendant. *See Sinkey*, 303 Or App at 678 (a 9-1-1 caller's report of a "possible drunk driver"—based on him seeing the defendant drink some beer while driving, stop at a market, slowly get out of his car, buy more beer, and resume driving—was not enough on its own to create probable cause for arrest, where the caller did not report seeing any of the usual signs of impairment, such as bloodshot eyes, slurred speech, or odor of alcohol, and there was no corroboration done by police before the defendant's arrest).

Because McKenna had probable cause to arrest defendant for DUII, the trial court erred in granting suppression of the evidence derived from the arrest.

Reversed and remanded.