Argued and submitted June 12, 2000, reversed and remanded for new trial
February 28, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## SCOTT LEE RIDDELL,
aka Calvin Kenneth Carpenter,
*Appellant.*

(9904-42781; CA A106786)

21 P3d 128

Edward Johnson argued the cause for appellant. With
him on the brief were Hannah Callaghan and Legal Aid Serv-
ices of Oregon.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* De Muniz, P. J., resigned.

## HASELTON, P. J.

Defendant appeals from his conviction for criminal trespass in the second degree. ORS 164.245. He argues that the trial court erred in refusing to permit him to challenge the validity of an exclusion order, issued several weeks before his arrest, that the state used to establish that defendant failed to leave premises open to the public "after being lawfully directed to do so by the person in charge." ORS 164.205; ORS 164.245.[1] We reverse and remand for a new trial.

We state the facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). On March 2, 1999, defendant was "freeze modeling" on top of a newspaper box on Pioneer Courthouse Square (the Square) when Jerry Dorie, a park officer for the City of Portland, issued him a 30-day exclusion order. The officer described the events as follows:

"[Defendant] was standing on top of a newspaper dispenser box. We call him Statue Man downtown. He stands at one particular pose for quite a long time. He had a hat down in front of him. I seen people come along and put money into the hat. I made contact with him, told him he couldn't do that. We had a conversation about city ordinance regarding stuff on the Square.[2] And I excluded him from Pioneer Square for that city ordinance of soliciting funds without a permit."

---

[1] ORS 164.245 provides, in part:

"A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully * * * in or upon premises."

ORS 164.205(3) provides, in part:

" 'To enter or remain unlawfully' means:

"* * * * *

"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge[.]"

[2] Portland City Code (PCC) § 20.12.010 provides:

"It is unlawful for any person to solicit for or conduct any business, or to sell or offer to sell any article or service, or to solicit for a charitable contribution in a park unless that person has been granted a concession or a park permit by the Commissioner In Charge of the Bureau of Parks or by the Council."

The exclusion order specified that defendant was prohibited from entering or remaining in the Square for 30 days, and further provided:

"To enter or remain in or on the above noted property during the indicated period of exclusion may result in your arrest for Criminal Trespass in the Second Degree, ORS 164.245.

"You may appeal your exclusion, in writing, to the Codes Hearing Officer, Room 1017, Portland Building, 1120 SW Fifth, Portland, Oregon, 97204. To be honored, your written appeal request must be filed within 5 days of receipt of this exclusion notice, and must be accompanied by a copy of this notice.

"Unless you request the presence of the issuing person at the appeal hearing, the Hearings officer will use the issuing person's sworn statement as evidence at the hearing in lieu of that person's testimony."

Defendant did not appeal the exclusion order. On March 7, 1999, Dorie saw defendant enter Pioneer Courthouse Square. On March 9, 1999, Dorie again saw defendant on the Square. Defendant saw Dorie and approached him and started talking. Dorie warned defendant that he was excluded from the Square. Defendant said, "Oh, it's not over yet?" Dorie replied that defendant was excluded until April 1, 1999. Defendant left the Square. Again on March 18, 1999, Dorie saw defendant on the Square. At that point, Dorie called a police officer, who issued defendant a citation for second-degree trespass. On March 22, 1999, Carroll Hyer, a park officer for the City of Portland, saw defendant walking through the Square, and wrote a report on a trespass. Hyer had a police officer again cite defendant for second-degree trespass.[3]

Defendant was charged by information with four counts of second-degree trespass based on the above-described events. At trial, defendant moved for dismissal on the ground that the city ordinance that served as a basis for the exclusion order was unconstitutional as applied to him.

_____

[3] The evidence does not indicate whether defendant was engaged in "freeze modeling" when he was seen in the Square on the 7th, 9th, 18th or 22nd of March.

Alternatively, he argued that he should be permitted to present evidence that he was engaged in constitutionally protected activity when the exclusion order was issued in support of his argument that the exclusion order was unconstitutional. He argued that the activity for which he was excluded, freeze modeling, constituted expressive activity, and that he had a constitutional right to engage in such activity in a public forum such as the Square. The trial court, citing *State v. Marbet*, 32 Or App 67, 573 P2d 736 (1978), held that defendant was not permitted to mount a collateral attack on the constitutional validity of the exclusion order, given that he had had an opportunity to appeal that order to the city and raise his constitutional arguments before a hearing officer. Defendant was found guilty on all four charges and fined $50.

Defendant appeals his convictions, arguing that the trial court erred in refusing to permit him to raise a constitutional defense to the trespass charges. Defendant argues that he may challenge the validity of the exclusion order in this proceeding because the state must demonstrate in a second-degree trespass case that an order that a person leave premises open to the public is "lawful." In support of his position, defendant relies on *State v. Cargill*, 100 Or App 336, 786 P2d 28 (1990), *aff'd by an equally divided court* 316 Or 492, 851 P2d 1141 (1993), *overruled on other grounds by Stranahan v. Fred Meyer*, 331 Or 38, 11 P3d 228 (2000), and *State v. Dameron*, 316 Or 448, 853 P2d 1285 (1993), *overruled on other grounds by Stranahan v. Fred Meyer*, 331 Or 38, 11 P3d 228 (2000).

In both *Cargill* and *Dameron* the defendants appealed convictions for second-degree trespass. In both cases, the state alleged that the defendants had remained unlawfully on premises open to the public after being lawfully directed to leave by the person in charge, and the defendants asserted that they had a constitutional right to remain on the premises. *Cargill*, 100 Or App at 339; *Dameron*, 316 Or at 454. The key language from the *Dameron* plurality on which defendant relies is:

"If a person has a state constitutional right to remain on premises, that right may be raised-as a defense to a charge

of criminal trespass. In that case, the burden to prove that the order to leave was lawful rests on the state. ORS 161.055." 316 Or at 457.

*See also Cargill*, 100 Or App at 340-41 (state has the burden of disproving defense that an order to leave premises open to the public was not lawful).

The state does not seriously dispute that it had the burden of proving every element of the crime of second-degree trespass and of disproving a defense that the order for defendant to leave premises open to the public was not lawful because defendant was engaged in constitutionally protected activity. Rather, the essential question is whether the state can prove the lawfulness of the order to leave premises that are open to the public, *i.e.*, the exclusion order, by establishing (1) that the order was issued pursuant to city ordinance, and (2) that defendant did not challenge its lawfulness in the forum provided through the city's ordinances for challenges to the lawfulness of its exclusion orders.

The state argues—and the trial court agreed—that *Marbet* is controlling. In particular, the state contends that, under *Marbet*, a defendant who fails to follow available appeal procedures waives any right to contest the lawfulness of an exclusion order.

The circumstances in *Marbet* were convoluted and unfortunately require an protracted description. In *Marbet*, the defendant was charged with second-degree trespass when he refused to leave a hearing of the Public Utility Commission after being ordered to do so by the hearing officer. 32 Or App at 69. The defendant had asserted to the hearing officer that he was a representative of one of the parties and thus entitled to cross-examine a witness, but the hearing officer had refused to permit him to do so. *Id.* at 70. The defendant then became disruptive. The hearing officer "told defendant he would be asked to leave if he did not cease his disruptive behavior." *Id.* The defendant persisted, was asked to leave by the hearing officer, and, when he refused to leave, was arrested and charged with second-degree trespass. *Id.* In his ensuing trespass trial, the defendant sought to introduce evidence that the hearing officer's ruling that the defendant was not entitled to cross-examine a witness at the hearing was

erroneous and that he therefore was not "lawfully directed" to leave the premises pursuant to the trespass statute. *Id.* at 71. The trial court rejected defendant's argument.

On appeal, we noted that an order to leave premises open to the public may "be limited or circumscribed by statutory or constitutional provisions." *Id.* at 72. For example, if a disabled person were asked to leave a restaurant because of the person's disability and refused to do so on the ground that the order to leave was unlawful under state discrimination statutes, "[t]hat the discrimination statute may have been violated by the order to leave is a proper inquiry in a criminal trespass trial." *Id.* at 73. We concluded that the same principle applies if a person has a constitutional right to remain on premises open to the public after being ordered to leave by the person in charge: "Whether a person has a constitutional right to remain as an incident to the proper exercise of a constitutionally protected right may be inquired into in contesting the lawfulness of the direction to leave the premises." *Id.*

If, however, "the authority of the person in charge to expel an individual from the premises is *not* limited by a constitutional or statutory right of the individual to remain, the order must be obeyed at the risk of a conviction for trespass." *Id.* (emphasis added). Applying those principles, we concluded that the "unlawful exclusion" defense in *Marbet* was misdirected:

> "[The defendant] contests the order to leave the hearing on the basis that a *previous* ruling of the hearing officer denying him the right to cross-examine a witness or otherwise participate in the proceedings was unlawful. He chose to show his disagreement with this ruling by disrupting the hearing. *His disruptive behavior was the precipitating cause of the order for him to leave. The ruling denying participation in a representative capacity did not expel him from the premises.* Whether that ruling was lawful does not effect [*sic*] the legality of the direction to leave the hearing room and consequently the legal basis of the ruling was irrelevant in the criminal trial." *Id.* at 74 (emphasis added).

We went on to note that the validity of the hearing officer's restriction of defendant's ability to cross-examine the witness could have been addressed "through the prescribed procedures for appeal" in the administrative proceeding. *Id.*

at 75.[4] However, the defendant, having chosen "to contest the ruling by haranguing the hearing officer and disrupting the hearing * * * assumes the consequences of his behavior which is the trespass charge." *Id.* Finally, we rejected the defendant's suggestion that the asserted violation of his constitutional rights by the hearing officer in refusing to let him cross-examine a witness in essence conferred upon him a constitutional right to disrupt the hearing:

> "The order for him to leave the hearing room did not deny him the right to participate as a representative of the Coalition. That issue had already been determined by the hearings officer's earlier ruling. His disruptive defiance of that ruling was the precipitating cause of the order to leave. * * * Under these facts a constitutional challenge to the hearings officer's *previous* ruling is irrelevant." *Id.* at 75-76 (emphasis added).

The state argues that this case is directly analogous to *Marbet.* Specifically, the state contends that, just as in *Marbet,* defendant's failure here to follow "the prescribed methods for appeal," *id.* at 75, defeats his trespass defense. The state argues that "what defendant did to cause himself to be excluded should not be considered by this court, because that question should have been litigated in a different forum, *i.e.,* through the appeal procedure provided by the Portland City Code."

That analogy fails. In *Marbet,* we carefully distinguished between (1) a constitutional or statutory right to remain on premises after being asked to leave, which we said *could* be raised as a defense to a charge of criminal trespass, *id.* at 73, and (2) a situation where a person disrupts a hearing—*not* a constitutionally or statutorily protected activity—as a result of an alleged violation of his or her constitutional rights, which is not a defense to a trespass charge. *Id.* In short, we distinguished between the hearing officer's ruling on whether the defendant could cross-examine a witness, and the subsequent order that the defendant leave the premises.

---

[1] Presumably, this court meant that the party to the proceeding whom the defendant claimed to represent could have raised any constitutional claim regarding the propriety of the hearing officer's rulings about defendant's participation in the proceeding.

The *first* of those rulings is the one that could have been appealed separately and was not a defense to the trespass charge; the *second* of those rulings was legitimately at issue in the criminal trespass action, but defendant could not prevail because he had no constitutionally protected right to disrupt the hearing.

Here, unlike in *Marbet*, defendant was excluded from the Square *as a result* of his allegedly constitutionally protected activity, *i.e.*, his expressive "freeze modeling" conduct. In *Marbet*, the defendant was not ordered to leave the premises because of his allegedly constitutionally protected activity; he was ordered to leave because he disrupted the proceeding. Thus, the proper analogy is to the hypothetical framed in *Marbet* in which a disabled person was ordered to leave premises due to his or her disability, and that order violated discrimination statutes. Under such circumstances, the issue of whether or not the discrimination statutes "had been violated by the order to leave *is* a proper inquiry in a criminal trespass trial." *Id.* at 73 (emphasis added). Similarly here, whether the constitution has been violated by the order to leave is a legitimate inquiry in the criminal trespass trial.

The state argues, nevertheless, that even if defendant could otherwise have challenged the constitutionality of the exclusion order in his criminal trespass trial, his failure to raise that issue by administrative appeal of the exclusion order precludes his present challenge. We disagree. As noted, *Marbet*, *Cargill* and *Dameron* establish that, in a criminal trespass prosecution based on a defendant's failure to obey an order to vacate premises open to the public, a defendant can challenge the lawfulness of that order. Conversely, Oregon courts have indicated that, under some circumstances, a collateral attack on the validity of an earlier order that has not been appealed is not permissible. For example, in the context of contempt of court, the Supreme Court has stated that "until an invalid order is set aside, it must be obeyed. Only when there has been no other opportunity to raise the issue can the validity of the underlying order be litigated in a subsequent contempt proceeding." *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977). However, the rationale for that rule is that the "integrity of the *judicial process* demands compliance with court orders until such

time as they are altered by orderly appellate review." *Id.* Consequently, no reported Oregon decision appears to have extended the *Mix* anti-collateral attack rule to nonjudicial orders.

■    To the contrary, we and the Supreme Court have held in somewhat similar contexts that administrative orders that serve as bases for certain types of criminal prosecutions *can* be collaterally attacked in the criminal proceedings. For example, in *State v. Hardt*, 81 Or App 607, 726 P2d 953, *adhered to on recons* 83 Or App 221, 730 P2d 1278 (1986), *rev den* 303 Or 74 (1987), we held that, in a criminal prosecution for a violation of an habitual traffic offender (HTO) order issued by the Motor Vehicles Division, a defendant was entitled to challenge the basis of that order. *Id.* at 609.[5] *See also State v. Fritz*, 85 Or App 1, 4, 735 P2d 1228 (1986), *rev den* 303 Or 700 (1987) ("a defendant in a driving while revoked prosecution can attack the convictions underlying the HTO order").

Also somewhat analogous is *State v. Ratliff*, 304 Or 254, 744 P2d 247 (1987). In *Ratliff*, the defendant was charged with driving under the influence of intoxicants and, in the criminal proceeding, asked the trial court to give preclusive effect to a ruling by a hearing officer in a related Motor Vehicles Division license suspension proceeding that his arrest was invalid. *Id.* at 256. The court stated:

"In the present case, we are asked to decide whether the doctrine [of issue preclusion or collateral estoppel] applies when a defendant in a criminal case seeks to estop the state

---

[5] In *Hardt*, the state argued that the defendant should not be entitled to collaterally attack the validity of the convictions underlying the HTO order, relying on *State v. Day*, 40 Or App 235, 594 P2d 1285 (1979) (holding that defendant in driving while suspended prosecution could not collaterally challenge the basis for underlying suspension). We held that *Day* had been implicitly overruled by *State v. Tooley*, 297 Or 602, 687 P2d 1068 (1984), which we interpreted as permitting a defendant charged with driving with a revoked license "collaterally to attack on statutory grounds the validity of a suspension order." *Hardt*, 81 Or App at 611. In *Tooley*, the state argued that a defendant's failure to request an administrative hearing on the revocation of his driving privileges precluded him from challenging the lawfulness of that suspension in a prosecution for driving with a revoked license. The court stated, however, that it "need not decide whether defendant has foregone his opportunity to challenge the revocation" given that he never was given adequate notice of the revocation in the first place. *Tooley*, 297 Or at 609.

from litigating an issue based on the decision of a hearing officer in an administrative proceeding.[5] Administrative hearings take many forms. It is possible that some may provide sufficiently formal and comprehensive procedures so that a decision in an administrative proceeding may have collateral estoppel effect in a subsequent judicial proceeding.

---

"[5] We note that the state would rarely, if ever, be able to assert collateral estoppel in this situation because of defendant's right to a jury trial. Or Const, Art I, § 11; US Const, Amend VI." *Id.* at 258 n 5.

In determining whether or not the hearing officer's ruling should be given preclusive effect, the *Ratliff* court considered the formality of the administrative proceeding, noting that the presiding hearing officer may or may not be a lawyer, that the party may be represented by attorneys, that the agency did not appear as a party and was not represented by an attorney, that the hearings were brief, and that the "litigation is not conducted as it would be in a court with two adversary parties and a neutral judge." *Id.* at 259. The court concluded that the hearings in question were "expedited and informal," *id.*, and therefore provided "inadequate basis to justify giving collateral estoppel effect to the decision of the hearing officer in these cases." *Id.* at 260. *See also State v. Krueger*, 170 Or App 12, 18-19, 12 P3d 53 (2000) (following *Ratliff*, and concluding that a circuit court's holding in a license suspension case does not preclude relitigation of the lawfulness of a traffic stop in a criminal proceeding).

In *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1994), the court again considered when a matter determined in an administrative proceeding should be given preclusive effect in a judicial proceeding, and developed a comprehensive list of factors to be considered. Following *Ratliff*, the court indicated that these factors included whether "[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue," and whether "[t]he prior proceeding was the type of proceeding to which this court will give preclusive effect." *Id.* Concerning the latter factor, the court elaborated that consideration of

that factor would include whether the administrative forum maintains procedures that are sufficiently formal and comprehensive and whether the same quality of proceedings and opportunity to litigate is present in both the administrative proceeding and the later court proceeding. *Id.* at 104-05 n 4.

We return to this case: Does defendant's failure to challenge the constitutionality of the exclusion order through the procedures prescribed in the Portland City Code preclude him from raising that challenge in defense to criminal trespass charges based on violations of the exclusion order? We conclude that defendant is not so precluded. *Mix* and its progeny do not control. As noted, the collateral bar announced and applied in those cases is expressly limited to judicial orders: "integrity of the *judicial* process demands compliance with *court* orders until such time as they are altered by orderly appellate review." *Mix*, 277 Or at 200 (emphasis added).

*Ratliff* and *Nelson* afford better—and ultimately dispositive—guidance: Even if defendant had pursued an administrative challenge to the exclusion order and the order had been ultimately upheld by a hearing officer, would that determination preclude relitigation in the criminal proceeding? We begin with *Ratliff's* admonition that the state will seldom prevail on arguments that a nonjury administrative decision has preclusive effect in a criminal case in which a defendant is entitled to a jury. 304 Or at 258 n 5. We further note that, in a criminal case, the state must prove the elements of the crime beyond a reasonable doubt, whereas a hearing officer's decision need only be "supported by, and in accordance with reliable, probative and substantial evidence." PCC 22.03.080(E). Moreover, a hearing officer is not limited by evidentiary rules such as the hearsay rule or constitutional provisions such as the confrontation clause, but may consider "evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their serious affairs." PCC 22.03.080(A). Although a party to a hearing under the Portland City Code may be represented by counsel, may present evidence, and may be afforded a number of procedural protections, an administrative hearing under the Portland City Code clearly is not as "formal and comprehensive" as a criminal proceeding, nor does it provide the "same

quality of proceedings and the opportunity to litigate" as does a criminal proceeding. *Ratliff*, 304 Or at 259-60.

Given those considerations, we conclude that a determination by a hearing officer concerning a violation of the Portland City Code is not the type of determination that a court in a criminal proceeding will accord preclusive effect. Accordingly, we conclude that defendant was entitled in this criminal trespass prosecution to challenge the constitutionality of the underlying exclusion order.

Reversed and remanded for new trial.