Argued and submitted July 31, reversed and remanded November 14, 2001

## STATE OF OREGON,
*Appellant,*

*v.*

## SHAWNELL L. WILLIAMS,
*Respondent.*

### C 99-10-51436; A109409

35 P3d 1088

Laura S. Anderson, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Laura Frikert, Deputy Public Defender, argued the cause for respondent. With her on the brief was David Groom, Oregon Public Defender.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

In this prosecution for criminal trespass in the second degree, ORS 164.245(1), the state appeals from a pretrial order suppressing evidence of an administrative order excluding defendant from a prostitution-free zone and from the ensuing order of dismissal. ORS 138.060(1), (3). We conclude that the order excluding defendant from the prostitution-free zone was lawfully issued and that the trial court erred in suppressing that evidence. Consequently, we reverse.

The material facts are undisputed. At 1:00 p.m. on October 7, 1999, Portland Police Officer Duddy was on duty near the intersection of Northeast 85th Avenue and Sandy Boulevard, a high vice area located in a prostitution-free zone. Duddy was a highly experienced vice officer who had worked in prostitution enforcement for most of his 13-year career in law enforcement. Duddy had participated in between 2,000 and 3,000 prostitution investigations and had coordinated all prostitution enforcement activities for Portland's Southeast precinct.

Duddy saw defendant sitting at a bus shelter near the intersection. Because that particular bus shelter was often used by prostitutes waiting for potential clients,[1] defendant's presence there aroused Duddy's suspicion that she was engaging in prostitution. Consequently, Duddy parked his car in the Grotto parking lot across the street and began watching defendant.

As he watched, Duddy noticed that defendant was looking at passing traffic and was trying to make eye contact with drivers as they passed the bus stop. Duddy further observed that, every time a car turned northbound onto 85th Avenue, defendant would turn to see if the car pulled into the parking lot behind her. Finally, after about 10 minutes, Duddy saw a red Mazda pull into the Grotto parking lot west

---

[1] Duddy testified that prostitutes used that particular bus stop because there was a parking lot behind the stop, which potential clients—or "johns"—could easily pull into and pick up the prostitutes. Duddy further testified that the Grotto parking lot is "a place where prostitutes have picked up tricks and gone and done their deals for years."

of where Duddy was parked. The driver of the car looked over at defendant, and defendant walked over to, and climbed into, the car. In Duddy's experience those events were consistent with prostitution activities.[2] Consequently, Duddy stopped the car based on his suspicion of prostitution activities.

Duddy spoke with both the driver and defendant. Duddy asked the driver if he knew defendant, and the driver answered that defendant was a friend. Duddy then took defendant to the back seat of his car, where he explained to her that he had been watching her. Duddy then told defendant: "I don't want you working out here,"[3] to which defendant responded, "Yeah. Okay. I'll leave." Duddy regarded defendant's response as an admission that she was working as a prostitute. Duddy also asked defendant if she knew the driver of the Mazda, and defendant responded that she did not.

At that point, Duddy arrested defendant for unlawful prostitution procurement activity, PCC 14.24.055,[4] and served her with a Notice of Exclusion excluding her from all Portland prostitution-free zones for a period of 90 days. PCC 14.150.030 A.[5] The notice of exclusion, which defendant signed and acknowledged she understood, stated, in part:

---

[2] Based on Duddy's training and experience, the trial court qualified him as an expert in prostitution enforcement.

[3] Duddy testified that the word "working" is a term that is commonly known in the prostitution community to mean that one is working as a prostitute.

[4] PCC 14.24.055 states:

"A. As used in this Section, 'prostitution' means that unlawful conduct defined in Section 14.36.065 of this Code. As used in this Section, 'prostitution procurement activity' means any conduct by any person that constitutes a substantial step in furtherance of an act of prostitution. Such activity includes, but is not limited to, lingering in or near any street or public place, repeatedly circling an area in a motor vehicle, or repeatedly beckoning to, contacting, or attempting to stop pedestrians or motor vehicle operators.

"B. It is unlawful for any person to engage in any prostitution procurement activity with an intent to induce, entice, solicit, procure, locate, or contact another person to commit an act of prostitution."

[5] PCC 14.150.030 A states, in relevant part:

"A. A person is subject to exclusion for a period of ninety (90) days from the public streets, sidewalks and other public ways in all prostitution-free zones designated in Code Chapter 14.150 if that person has been arrested or otherwise taken into custody within any prostitution-free zone for any prostitution

"On 10-7, 1999 at approximately 1:00 pm, you were arrested in the City of Portland in a Prostitution-Free Zone for one of the following offenses: * * * Unlawful Prostitution Procurement Activity, in violation of Portland City Code 14.24.055. Pursuant to the authority granted under Portland City Code Chapter 14.150, you are hereby initially excluded for a period of ninety (90) days from entering or remaining in any Prostitution-Free Zone.

"* * * * *

"Appeal of * * * exclusion * * * must be filed within seven (7) calendar days of receipt of the initial 90 day exclusion[.]"

After serving defendant with the notice, Duddy told defendant that she was no longer under arrest, and released her. Thereafter, defendant did not seek administrative review of the exclusion order pursuant to PCC 14.150.060 (affording "any person" to whom an administrative exclusion order is issued five business days in which to seek review of the exclusion).

On October 20, 1999, Duddy saw defendant within a prostitution-free zone in violation of the exclusion order and arrested her, charging her with criminal trespass in the second degree. ORS 164.245(1). Before trial, defendant moved *in limine* to suppress evidence of her exclusion from the prostitution-free zone, including the exclusion order. Defendant argued, principally, that the exclusion order was unlawful because: (1) PCC 14.150.030 "authorizes exclusion only upon a lawful arrest"; and (2) Duddy's arrest of defendant was not lawful in that the "facts, as reported by Officer Duddy, do not support an objectively reasonable finding of probable cause" that defendant was engaged in prostitution activities. Defendant alternatively asserted that Duddy's initial stop of defendant was unsupported by reasonable suspicion and that the subsequent arrest and issuance of the exclusion order were tainted by that alleged prior illegality.

---

related activities including the following offenses, unless the offense was committed entirely within a private residence:

"* * * * *

"6. Unlawful prostitution procurement activity, in violation of Portland City Code 14.24.055."

In response, the state argued that defendant could not collaterally attack the lawfulness of the prior exclusion order in the context of a prosecution for criminal trespass. The state further contended that, even if such a collateral attack were cognizable, defendant's challenge failed on the merits because the stop was supported by reasonable suspicion and the arrest and concomitant issuance of the exclusion order were supported by probable cause.

The trial court granted defendant's motion. The court first concluded that defendant's collateral challenge to the exclusion order was cognizable in this criminal prosecution.[6] The court further concluded, as to the merits, that: (1) Duddy had reasonable suspicion to stop defendant; but (2) Duddy did not have probable cause to arrest defendant for prostitution procurement activities or, relatedly, to exclude her from the prostitution-free zone. *See* PCC 14.150.030 (requiring that a person can be excluded from a prostitution-free zone only if he or she "has been arrested or otherwise taken into custody within any prostitution-free zone"). Because the state could not proceed to trial without the excluded evidence, the trial court dismissed the case.

On appeal, as before the trial court, the state argues that a collateral challenge to the exclusion order is not cognizable in this context. In that connection, the state vigorously asserts that our recent decision in *State v. Riddell*, 172 Or App 675, 21 P3d 128, *rev den* 332 Or 430 (2001), which sustained a similar challenge, is wrong and must be overruled. Beyond that, the state reiterates its arguments as to the lawfulness of the stop and subsequent arrest and issuance of the exclusion order. Conversely, defendant, invoking *Riddell*, defends the trial court's determination that the issuance of the exclusion order was invalid because there was no probable cause for the underlying arrest and—as an alternative basis for affirmance—attacks the lawfulness of the initial stop.

At the outset, we decline the state's invitation to revisit *Riddell* in this context. However, as amplified below,

---

[6] The trial court's decision in that regard is consistent with, although decided before, *State v. Riddell*, 172 Or App 675, 21 P3d 128, *rev den* 332 Or 430 (2001).

we conclude that there was probable cause for the arrest and consequent issuance of the exclusion order. Moreover, we reject defendant's alternative arguments pertaining to the lawfulness of the initial stop. We therefore conclude that the trial court erred in suppressing evidence of defendant's exclusion.

For analytical cogency, we begin with the stop. Defendant argues that Duddy's stop of the red Mazda (and defendant) was not supported by reasonable suspicion. *See* ORS 131.615(1) (peace officer may stop a person whom the officer reasonably suspects has committed or is about to commit a crime). In *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993), the court summarized the reasonable suspicion inquiry under ORS 131.615:

> "The statutory standard for the stopping and questioning of a person concerning his or her possible criminal activity was intended to be less than the standard for probable cause to arrest. The standard is reasonable suspicion, and it requires an objective test of observable facts. Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience. If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for investigation." (Citations and footnotes omitted.)

That inquiry has both a subjective and objective component: The officer must subjectively believe that the person stopped has committed a crime, and that belief must be objectively reasonable. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997).

Here, there is no dispute that Duddy actually suspected that defendant was engaged in prostitution procurement activities in violation of PCC 14.24.055. Thus, we turn to the information known to Duddy when he stopped defendant to assess whether that suspicion was objectively reasonable. *Belt*, 325 Or at 13 (analyzing whether the "information known by the officer" supported the officer's suspicion that the defendant had committed the crime of solicitation).

Before stopping defendant and the driver of the car, Duddy observed defendant in a high vice/prostitution area sitting at a bus stop commonly used by prostitutes. During the 10 minutes that Duddy observed defendant, he saw her attempting to make eye contact with passing drivers in a manner "consistent with a working prostitute." Duddy also observed that, every time a car would turn northbound from Sandy onto 85th Avenue, defendant would turn to see if the car pulled into the parking lot behind her. Finally, Duddy saw the red Mazda pull into the Grotto parking lot, after which the driver looked over at defendant and defendant, in response, crossed the street and got into the Mazda. Those facts, viewed in light of Duddy's expertise and extensive experience in prostitution-related investigations, gave rise to reasonable suspicion. *Ehly*, 317 Or at 80 ("Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience.").

Defendant, relying on *State v. Brown*, 31 Or App 501, 570 P2d 1001 (1977), nevertheless argues that those facts do not support Duddy's suspicion that defendant was engaging in prostitution procurement activities. We disagree. In *Brown*, police officers saw the defendant, whom they did not recognize, walking in a high vice area frequented by prostitutes. The officers approached the defendant and told her that they did not want prostitutes in the area; the defendant did not respond. Sometime later, the officers returned to the area and saw the defendant speaking with a known prostitute. The officers, suspecting that the defendant was loitering to solicit prostitution, stopped her and asked for her identification. A record check disclosed that there was an outstanding traffic warrant for the defendant's arrest, so the officers arrested her and searched her incident to arrest. That search revealed a knife and, based on that discovery, the defendant was charged with and convicted of carrying a concealed weapon in violation of ORS 166.240. *Brown*, 31 Or App at 503. On appeal, we reversed, holding that, because none of the defendant's actions gave rise to anything more than mere speculation that she was either engaged in prostitution or loitering to engage in prostitution, the officers'

stop of defendant was not supported by reasonable suspicion. *Id.* at 507-09.

Aspects of this case, particularly defendant's presence in a high vice area known for prostitution, are similar to *Brown.* However, this case is materially distinguishable from *Brown* in that defendant, unlike the defendant in *Brown*, repeatedly engaged in acts—including efforts to make eye contact with drivers over a 10-minute period and consistently tracking vehicles to see if they were turning into the parking lot that was a rendevous place for prostitution encounters—that the highly experienced officer described as "consistent with a working prostitute." Thus, in the totality of the circumstances, Duddy's suspicion that defendant was engaged in prostitution procurement activities in violation of PCC 14.24.055 was reasonable.

■ We next consider whether Duddy's issuance of the exclusion order was supported by probable cause.[7] Under Article I, section 9, of the Oregon Constitution, probable cause exists only if the arresting officer subjectively believes that it is more likely than not that an offense has been committed and that belief is objectively reasonable. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Defendant argues that neither of those components is present here. We disagree.

■ As noted, probable cause has both a subjective and an objective component. *Owens*, 302 Or at 204. "A finding of subjective probable cause does not require specific testimony from the arresting officer but rather, can be inferred from the totality of the circumstances." *State v. Miller*, 157 Or App 489, 492, 972 P2d 896 (1998), *rev den* 328 Or 365 (1999) (citing *State v. Bickford*, 157 Or App 386, 390-91, 970 P2d 234 (1998), *rev den* 329 Or 589 (2000)). The circumstances here

---

[7] At the suppression hearing, there was some discussion as to whether defendant was actually "arrested" by Duddy and, thus, whether the exclusion order was properly issued pursuant to PCC 14.150.030, which requires that a person be "arrested or otherwise taken into custody" as a prerequisite to issuance of an exclusion order.

Neither party raises that issue on appeal. In all events, the evidence at the suppression hearing demonstrated that Duddy had arrested defendant for unlawful prostitution procurement activities concurrently with serving defendant with the exclusion order.

establish that Duddy had the requisite subjective belief. In particular, at the suppression hearing, Duddy testified that, before he even stopped defendant, her actions led him to believe that she was working as a prostitute. Duddy also testified that he regarded defendant's response to his request that she not "work" in the area—"Yeah. Okay. I'll leave."—as an admission that defendant had been working as a prostitute. That testimony, which defendant did not challenge before the trial court, establishes subjective probable cause.[8]

The issue thus reduces to whether, under the circumstances, that belief was objectively reasonable. The state, relying on *State v. Martin*, 327 Or 17, 956 P2d 956 (1998), argues that it was. We agree.

In *Martin*, an officer was driving to work near an intersection known for its significant drug activity when he observed what he thought was a hand-to-hand drug transaction between the defendant and the passenger in a van. Two hours later, the officer returned to the intersection, where he saw the defendant standing in the same location. The officer stopped the defendant and conducted a warrantless search of his person. That search revealed rock cocaine. *Id.* at 19-20.

In the defendant's prosecution for delivery and possession of a controlled substance, the trial court suppressed the cocaine, concluding that the officer's warrantless search of the defendant was not supported by probable cause. The Supreme Court reversed, concluding that the totality of the circumstances—the defendant's location at an area known for its regular drug activity, the fact that the defendant had no other apparent purpose for being at that location, the officer's observation of the earlier hand-to-hand exchange, and the fact that the defendant was at the same location when the officer later returned to the area—provided the requisite objective probable cause:

---

[8] Defendant did not argue to the trial court that there was a lack of subjective probable cause and did not raise the issue in her brief on appeal. Instead, defendant raised that issue for the first time at oral argument—and, as the sole basis for that argument, pointed to some ruminations by the trial court, which did not pertain to whether Duddy had subjective probable cause but, rather, to whether Duddy actually arrested defendant. As noted, 178 Or App at 60 n 7, the record establishes that Duddy did arrest defendant.

"Under the totality of the circumstances, we further con-
clude that [the officer's] belief was objectively reasonable.
Especially significant, in our view, is the fact that defen-
dant was back at the corner two hours after his encounter
with the van. Given all that [the officer] already had wit-
nessed and the specific nature of that location as a drive-up
drug dispensing location near 'crack central,' it was more
likely than not that defendant was dealing drugs at that
corner and was, when [the officer] saw him the second time,
actually in possession of drugs." *Martin*, 327 Or at 22.

This case is much stronger than *Martin*. Here, as in
*Martin*, defendant's presence at a location well known to
police for prostitution, her behavior during the 10 minutes
she was observed by Duddy, and her getting into the red
Mazda after she made eye contact with the driver, when con-
sidered in light of Duddy's extensive experience, suggest that
defendant was engaged in prostitution procurement activi-
ties.[9] *See Martin*, 327 Or at 23 (officer's observations and con-
clusions, "filtered through the lens of his experience" pro-
vided objective probable cause); *State v. Crampton*, 176 Or
App 62, 73, 31 P3d 430 (2001) (same).

Beyond those parallels with *Martin*, however, two
other circumstances not present in *Martin* further buttress
objective probable cause. First, in responding to Duddy's
admonition not to "work" in the area, defendant answered in
a way that could reasonably be understood as an implicit
admission that she had been working as a prostitute. Second,
there was an irreconcilable contradiction between the
driver's and defendant's statements to Duddy—the driver
said that defendant was "a friend," but defendant said that
she did not know the driver. In the totality of the circum-
stances, that contradiction strongly suggested that defen-
dant was engaged in prostitution procurement activities.
Duddy's issuance of the exclusion order to defendant was
supported by probable cause.

---

[9] At oral argument, defendant argued that her actions could also be indicative
of noncriminal activities such as waiting for a bus or to meet a friend. However, as
we have repeatedly emphasized, "[o]fficers are not required to eliminate all possi-
ble lawful explanations for conduct that reasonably appears to violate the law."
*State v. Bourget-Goddard*, 164 Or App 573, 578, 993 P2d 814 (1999), *rev den* 330 Or
331 (2000); *see also State v. Spruill*, 151 Or App 87, 92, 948 P2d 726 (1997) (stating
principle).

In sum, defendant was lawfully excluded from Portland's prostitution-free zones. Consequently, the trial court erred in suppressing evidence of that exclusion.

Reversed and remanded.