Argued and submitted July 14, reversed and remanded September 29, 2010

## Julie A. WERTH,
*Petitioner,*

*v.*

## EMPLOYMENT DEPARTMENT
and Tillamook County Creamery Association,
*Respondents.*

Employment Appeals Board
09AB0423; A141601

240 P3d 86

Heather Kemper argued the cause for petitioner. With her on the briefs was Legal Aid Services of Oregon.

Dian Rubanoff argued the cause for respondent Tillamook County Creamery Association. With her on the brief was Williams, Zografos & Peck, P.C.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, Department of Justice, waived appearance for respondent Employment Department.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Claimant seeks judicial review of an order of the Employment Appeals Board denying her claim for unemployment insurance benefits. Claimant quit her job with employer Tillamook County Creamery Association after being stalked by another employee for several months. The board concluded that claimant's belief that further stalking would occur was not reasonable, that she did not pursue reasonable alternatives to quitting her job, and that she quit her job without good cause. We reverse.

We take the following, undisputed facts from the board's order as supplemented by the record. *See Lane v. Employment Dept.*, 229 Or App 556, 558, 213 P3d 9 (2009). Claimant began working for employer as a senior engineering drafter in April 2007. She lived in Tillamook at the time. In 2008, claimant briefly dated a fellow employee, Jordan, but decided that she did not want to see him anymore. Jordan continued to call her and ask her out even though she told him that she was not interested. Claimant moved to a different home in Tillamook and complained to the police, who warned Jordan to stop bothering her. In spite of the warning, Jordan began following claimant after work, apparently trying to find out where she now lived. In August 2008, Jordan followed claimant down a hallway in a secured area of employer's facilities where he did not work.

In late August 2008, claimant obtained a temporary stalking protective order (SPO). She notified employer, which implemented guidelines limiting Jordan to working in certain areas of its facilities and instructing claimant not to enter some areas during times that Jordan was required to be there. Other employees told claimant that Jordan was violating the guidelines by entering certain areas during times that he was not supposed to be there, but claimant never again saw him at work.

A hearing to make the temporary SPO permanent was held in late September 2008. The court concluded that claimant's alarm resulting from Jordan's conduct was not objectively reasonable, and it dismissed the SPO. Shortly thereafter, on October 2, Jordan surprised claimant in the parking lot of a grocery store. He told her that, since the SPO

was no longer in place, he could "do anything he wanted to do and be anywhere he wanted to be * * *." Claimant reminded him that the court had warned him that "if he continued the behavior, all this stuff would come back up again * * *." Jordan grabbed claimant's arm, pulled her close to him, and told her he knew a lot of the wooded areas around Tillamook and that he could easily make her "disappear."

Six days later, claimant visited a women's crisis center in Tillamook to develop a "safety plan." While she was there, she saw Jordan going in and out of a nearby store, walking around the block, and staring at her car. She remained in the crisis center until he left the area.

The next week, on October 16, claimant stopped at a store on the way home from work. As she was leaving, Jordan was there waiting for her. He had acquaintances follow her. Rather than going home, claimant drove to the police station and called the police from the parking lot. Jordan's acquaintances drove away. The police told claimant that Jordan was at the Sheriff's office stating that someone had told him that claimant had purchased a gun and that he was afraid for his safety. The police said that they were going to go to the Sheriff's office to talk to Jordan and that she could drive home while they were there.

A week later, on October 23, claimant was stopped at a stop light on her way home from work. Jordan's son jumped out of some bushes and began taking pictures of her. Claimant called the police, who talked to Jordan. He admitted that he had had his son take the pictures.

Shortly thereafter, claimant obtained another temporary SPO. A hearing was scheduled for November 13 to determine whether the SPO should be made permanent. Claimant again notified employer about the SPO, and it reaffirmed the previously implemented guidelines to ensure that claimant and Jordan did not work in the same area at the same time.

On November 4, claimant's supervisor, Mulder, directed her to create a drawing showing how some new equipment would fit in employer's milk receiving area, an area in which Jordan could have been making deliveries at

the time. Claimant mistakenly believed that Mulder was ordering her to go into that area to take measurements in order to produce the drawing. She went to employer's human resources department and complained. The human resources manager spoke to Mulder, who explained that he had not ordered claimant to work in that area. Claimant continued to believe that Mulder had ordered her to work in that area and that he had lied to the human resources manager.

Two days later, employer gave claimant a written warning alleging various productivity, attendance, and behavioral issues. Claimant disagreed with the allegations and believed that employer was retaliating against her for alleging that Jordan was stalking her.

On November 8, claimant moved again, this time to a house that she owned in Portland, approximately 70 miles away, and began commuting to work.

On November 12, Jordan made a successful motion to postpone the hearing on the SPO, which had been scheduled for the following day, until late December. The following Monday, November 17, claimant notified employer that she was quitting her job, effective that day.

Claimant applied for unemployment insurance benefits. The Employment Department denied her claim, and claimant requested a hearing. At the hearing, she testified about the interactions with Jordan described above as well as the incident with Mulder and the written warning. She testified that she had moved to Portland rather than some place closer to Tillamook "because I'd just be followed there like I was the last time I'd moved within Tillamook, so I tried to find a place that was far enough away that I could actually sleep at night and not worry about this man coming." She also stated that she was concerned about employer retaliating against her and that, after Jordan got the SPO hearing postponed, "I was going to be in a hostile work environment, along with being exposed to my stalker if I stayed at my workplace. It was best for me to stay out of Tillamook." She testified that "I was just [having] repeated problems with this man, and I was having problems at work too, and I didn't feel safe." Claimant stated that she ultimately decided to quit on November 17 because

"[t]he very next day was a Tuesday, and I knew that he was going to be there first thing in the morning, so I had to quit. I just couldn't take it. Tuesday morning was another day he was going to be there at the workplace, and I didn't know * * * what was going to happen—whether he was going to come into my area unexpectedly, whether I was going to be chased on my way home. There's only one way in and out of Tillamook from where I'm living. All he'd have to do is sit there and wait for me on the highway."

Employer's counsel asked claimant whether the long commute affected her decision to quit. Claimant replied,

"Not as much as the fact that I was driving to Tillamook where he could be, and where he had access to me, and if he was wanting to off me like he said he was going to do, this was the time for him to do it before the protective order was in place.

"* * * * *

"And so I felt it was a very dangerous time for me to be in the area where this guy was continually chasing me."

Claimant also testified that a hearing was held on the second temporary SPO in late December 2008. She stated that the court had dismissed the SPO after again finding that her alarm was not objectively reasonable.[1]

After the hearing, the administrative law judge affirmed the denial of unemployment insurance benefits. Claimant appealed to the board. The board found that she had quit work in part because of the stalking.[2] It concluded that claimant had indeed been a victim of stalking and that, "[g]iven the physical assault and threatening statement made by the employee on October 2, 2008, claimant's alarm and apprehension regarding her personal safety were objectively reasonable." However, it concluded that claimant "failed to establish that her belief that further stalking would

---

[1] Claimant appealed the dismissal of the SPO. That appeal is pending in this court.

[2] The board found that claimant also quit in part because she believed that employer was retaliating against her for alleging that Jordan was stalking her. The board concluded that claimant had failed to establish that employer was, in fact, retaliating. Claimant does not challenge that ruling on judicial review, so we do not consider it.

occur was reasonable." It noted that the last stalking incident had occurred on October 23, 2008, and that, since then, claimant had obtained a second temporary SPO and moved to Portland, and employer had reaffirmed its guidelines to protect her at work. It also noted that Jordan had not violated either temporary SPO or attempted to contact claimant in Portland and that claimant had not seen Jordan at work since August 2008.

The board also concluded that claimant had failed to pursue reasonable available alternatives to quitting work. It noted that she had obtained a second temporary SPO and "intended to seek a permanent protective order at a hearing in December 2008. However, claimant quit work before doing so. Claimant quit work before pursuing an action that, in her perception, best guaranteed her safety."

In light of its conclusions that claimant's concerns about further stalking were unreasonable and that she had not pursued reasonable available alternatives to quitting, the board stated, "we cannot find that claimant had no reasonable alternative but to quit" and, thus, that she had failed to establish that she had quit for good cause based on the stalking. It therefore affirmed the denial of unemployment insurance benefits. Claimant sought judicial review.

■■ Before we state the parties' arguments on review, a brief overview of the applicable statutes and administrative rules is helpful. An individual who voluntarily leaves work without good cause is disqualified from receiving unemployment insurance benefits. ORS 657.176(2)(c). ORS 657.176(12) (2007), which was in effect when claimant sought benefits,[3] provided that an individual could not be disqualified from receiving benefits under subsection (2)(c) if:

> "(a) The individual is a victim, or is the parent or guardian of a minor child who is a victim, of domestic violence, stalking, or sexual assault;

---

[3] ORS 657.176 was amended in 2009. Or Laws 2009, ch 115, § 3. Among other things, the legislature eliminated the requirement previously found in subsection (12)(c) that the claimant pursued "reasonable available alternatives to leaving work" to be eligible for benefits. Because claimant filed her claim before the amendment took effect, the 2009 version of the statute does not apply. *See* Or Laws 2009, ch 115, § 10.

"(b) The individual leaves work * * * to protect the individual or the minor child from further domestic violence, stalking or sexual assault that the individual reasonably believes will occur at the workplace or elsewhere; and

"(c) The individual pursues reasonable available alternatives to leaving work * * *."

The term "reasonable available alternatives" is defined in OAR 471-030-0150(5) (2008):[4]

"As used in ORS 657.176(12), the term 'reasonable available alternatives' as used in this section means whatever action or series of actions, that in the perception of the individual, best guarantee the safety of the individual or the minor child."

Claimant argues that the board erred in concluding that she was disqualified from receiving benefits under both the general "good cause" standard in ORS 657.176(2)(c) and the standard for stalking victims in ORS 657.176(12). Because it is dispositive, we address only the latter argument. Claimant argues that her belief that further stalking would occur was objectively reasonable. She also argues, among other things, that substantial evidence does not support the board's conclusion that she perceived pursuit of a permanent SPO as the best guarantee of her safety.[5]

In response, employer argues that the board's conclusion that claimant's belief that further stalking would occur was unreasonable is rationally related to the findings that Jordan never violated either of the protective orders and that an SPO was in place when claimant quit her job. Employer asserts that claimant engaged in conjecture by speculating that Jordan would violate a temporary SPO

---

[4] OAR 471-030-0150 was also amended in 2009 to eliminate the definition of "reasonable available alternatives." That amendment does not affect our decision.

[5] Claimant also argues that the board misconstrued the term "reasonable available alternatives" as defined in OAR 471-030-0150(5) (2008). She asserts that the rule requires an assessment of the claimant's subjective view of what constitutes the best guarantee of safety, and she contends that the board substituted its own view of what would be the best alternative for claimant. We conclude that board did not misconstrue the rule. Although we agree with claimant that OAR 471-030-0150(5) (2008) requires an assessment of the claimant's subjective beliefs, that is what the board did here: It found that claimant perceived pursuing a permanent SPO as the best guarantee of her safety.

when he had not done so in the past. Finally, employer argues that the board's finding that claimant perceived a permanent SPO as the best guarantee of her safety is supported by the evidence that, after Jordan threatened claimant's life and continued to stalk her, she chose to obtain a second temporary SPO and to seek a permanent SPO.

■ We begin by considering the board's determination as to the reasonableness of claimant's belief that further stalking would occur. Whether claimant's belief that further stalking would occur was reasonable is a question of law.[6] Accordingly, we review not merely to determine whether the board's conclusion is rationally related to its findings, as employer asserts, but to determine whether the conclusion is legally correct.

In our view, claimant's belief that further stalking would occur was reasonable. We acknowledge, as the board noted, that Jordan never violated the first temporary SPO and, at the time claimant quit working, had thus far not violated the second one either. Those facts, taken alone, might support an inference that an SPO was an effective deterrent against further stalking and, thus, support the conclusion that, as long as an SPO was in effect, claimant's belief that further stalking would occur was unreasonable. However, those are not the only relevant facts. EAB found that Jordan had ignored warnings from the police to leave claimant alone. There is also uncontested evidence in the record that he ignored at least some of the restrictions that employer had

---

[6] *See, e.g.*, *State v. Toevs*, 327 Or 525, 535, 964 P2d 1007 (1998) (whether a person's belief that he or she is not free to leave during an encounter with the police is reasonable is a question of law); *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 239, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) (in a claim for wrongful initiation of civil proceedings, whether the defendant had a reasonable basis to believe that the underlying claim was valid is a question of law); *State v. Pollock*, 189 Or App 38, 41-42, 73 P3d 297 (2003), *aff'd*, 337 Or 618, 102 P3d 684 (2004) (in determining whether a police officer had probable cause to arrest a person, whether the officer's belief that it was more likely than not that a crime occurred is reasonable is a question of law). *But see Neighbors v. Blake*, 167 Or App 343, 346-47, 3 P3d 172 (2000) (whether a delay in paying a workers' compensation claim was reasonable is a question of fact); *Cunningham v. Happy Palace, Inc.*, 157 Or App 334, 337, 970 P2d 669 (1998), *rev den*, 328 Or 365 (1999) (in tort actions, whether an injury is reasonably foreseeable generally is an issue of fact); *State v. Hansen*, 3 Or App 378, 384, 474 P2d 17 (1970) (when a criminal defendant asserts self-defense, the reasonableness of the defendant's belief that an unlawful use of physical force against him or her was imminent is a question for the jury).

put in place after the first temporary SPO was issued. There is also uncontested evidence that, although the court dismissed that SPO, it warned Jordan against continuing his behavior toward claimant, a warning Jordan clearly also ignored. Furthermore, EAB's findings indicate that Jordan's conduct escalated and became significantly more disconcerting after the first SPO was dismissed. In light of Jordan's demonstrated willingness to ignore those warnings and restrictions and the escalation in his conduct—particularly the threat to kill claimant—we conclude that it was reasonable for claimant to believe that Jordan would ultimately ignore the second temporary SPO and that further stalking would occur. The board erred in concluding otherwise.

■      We turn to the board's conclusion that claimant quit work before pursuing reasonable available alternatives to quitting. As noted, OAR 471-030-0150(5) (2008) provides that "the term 'reasonable available alternatives' * * * means whatever action or series of actions, that in the perception of the individual, best guarantee the safety of the individual * * *." The board found that claimant intended to seek a permanent SPO but quit before doing so, stating, "Claimant quit work before pursuing an action that, in her perception, best guaranteed her safety." Claimant argues that substantial evidence does not support the board's finding that she perceived pursuit of a permanent SPO as the best guarantee of her safety. We agree.

"Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). We question whether it is reasonable to infer that, merely because claimant intended to seek an SPO, she perceived that as the best guarantee of her safety. Nevertheless, even assuming that claimant *initially* perceived a permanent SPO as the best guarantee of her safety, the record does not support the finding that she held that perception when she decided to quit her job. Rather, the undisputed evidence shows that, when claimant learned that the SPO hearing had been postponed for more than a month at Jordan's request, she feared that she was not safe. Claimant testified that, after the hearing was postponed, "[i]t was best for [her] to stay out of Tillamook," and that she felt that it was "a very

dangerous time for [her] to be in the area * * *." The only inference that can reasonably be drawn is that, after the hearing was postponed, claimant did not perceive a permanent SPO as the best guarantee of her safety. Thus, claimant was no longer required by ORS 657.176(12)(c) to pursue it as an alternative to leaving work.

The board did not identify any other reasonable available alternatives to leaving work that claimant should have pursued but failed to. It follows that the board erred in concluding that claimant failed to establish that she had pursued reasonable available alternatives.

Because claimant's belief that further stalking would occur was reasonable, and because she did not fail to establish that she had pursued reasonable available alternatives to quitting work, claimant could not be disqualified from receiving benefits under ORS 657.176(2)(c). The board erred in denying her claim for benefits.

Reversed and remanded.