**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

MARCUS SCOTT CRUM,
*Defendant-Appellee*.

No. 17-30261

D.C. No.
1:17-cr-00147-
BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted December 5, 2018
Seattle, Washington

Filed August 16, 2019

Before: William A. Fletcher, Jay S. Bybee, and
Paul J. Watford, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Watford

# SUMMARY[*]

## Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the district court held that delivery of methamphetamine in violation of Oregon Revised Statutes § 475.890 does not qualify as a "controlled substance offense" under U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(b).

The district court agreed with the defendant that Oregon's delivery-of-methamphetamine offense is overbroad as compared to the federal definition of "controlled substance offense" because only the former encompasses soliciting the delivery of methamphetamine. The panel held that *United States v. Shumate*, 329 F.3d 1026 (9th Cir. 2003) (construing the same Oregon definition of "delivery"), compels the holding that § 475.890 is not overbroad on the basis that it encompasses soliciting delivery. The panel that the district court erred in applying *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017), which is inapplicable in that it involved the different analysis employed for determining whether an offense qualifies as a "drug trafficking crime" under the Controlled Substance Act.

The defendant asked the panel to reconsider this court's decision in *Shumate* on the ground that the commentary to § 4B1.2 (Application Note 1), on which *Shumate* relied to hold that "controlled substance offense" encompasses

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

solicitation offenses, lacks legal force because it is inconsistent with the text of the guideline. The panel wrote that if it were free to do so, it would hold that the commentary improperly expands the definition of "controlled substance offense" to include other offenses not listed in the text of the guideline, but that it is bound by this court's decision in *United States v. Vea-Gonzales*, 999 F.2d 1326 (9th Cir. 1993), which held that Application Note 1 of § 4B1.2 is "perfectly consistent" with the text of § 4B1.2.

The panel rejected the defendant's argument that Oregon's delivery-of-methamphetamine offense sweeps more broadly than the federal definition of "controlled substance offense" because the Oregon offense criminalizes the mere offer to sell methamphetamine. The panel explained that as noted in *Sandoval*, offering to sell a controlled substance constitutes soliciting delivery of a controlled substance, and because solicitation does fall within the definition of "controlled substance offense" under § 4B1.2, an offer to sell a controlled substance under Oregon law is a categorical match for solicitation of a "controlled substance offense" under § 4B1.2.

The panel concluded that the district court should therefore have applied a base offense level of 20 under § 2K2.1(a)(4)(A).

Dissenting, Judge Watford wrote that the Oregon offense criminalizes more conduct than the federal offense does, rendering the Oregon offense overbroad, because a mere offer to sell does not constitute solicitation of a "controlled substance offense."

**COUNSEL**

Francis J. Zebari (argued), Special Assistant United States Attorney; Bart M. Davis, United States Attorney; United States Attorney's Office, Boise, Idaho; for Plaintiff-Appellant.

Theodore Braden Blank (argued) and Robert K. Schwarz, Federal Defender Services of Idaho, Boise, Idaho, for Defendant-Appellee.

**OPINION**

PER CURIAM:

Marcus Crum pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The United States Sentencing Guidelines assign a higher base offense level for that offense if the defendant has previously been convicted of a "controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The question before us is whether Crum's prior conviction for delivery of methamphetamine in violation of Oregon Revised Statutes § 475.890 qualifies as a "controlled substance offense." We conclude that it does, and remand to the district court for resentencing.

I

We use the categorical approach to determine whether a defendant's prior conviction qualifies as a federal "controlled substance offense." *See United States v. Brown*, 879 F.3d 1043, 1046 (9th Cir. 2018). Under that approach, we compare the elements of the state offense to the elements

of the federal definition of "controlled substance offense" to determine whether the state offense "criminalizes a broader range of conduct than the federal definition captures." *United States v. Edling*, 895 F.3d 1153, 1155 (9th Cir. 2018).

Section 4B1.2(b) of the Sentencing Guidelines defines the term "controlled substance offense" to mean, as relevant here, an offense under state law that prohibits the "distribution[] or dispensing of a controlled substance." U.S.S.G. § 4B1.2(b).[1] The commentary to § 4B1.2, specifically Application Note 1, further provides: "'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2 cmt. n.1. Crum contends that Oregon's delivery-of-methamphetamine offense is overbroad as compared to the federal definition of a "controlled substance offense."

The elements of the Oregon offense are fairly simple. Oregon Revised Statutes § 475.890 makes it unlawful "for any person to deliver methamphetamine." Under Oregon law, "delivery" of a controlled substance means, as relevant here, the "actual, constructive or *attempted transfer* . . . from one person to another of a controlled substance." Or. Rev. Stat. § 475.005(8) (emphasis added). Attempted transfer, in

---

[1] Section 4B1.2(b) reads in full:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

turn, has been construed to include soliciting another person to deliver a controlled substance, *see State v. Sargent*, 822 P.2d 726, 728 (Or. Ct. App. 1991), as well as offering to sell a controlled substance, *see State v. Pollock*, 73 P.3d 297, 300 (Or. Ct. App. 2003). Crum argues that neither soliciting delivery nor offering to sell is encompassed within the federal offense, thus rendering the Oregon offense overbroad.

The district court agreed with Crum, relying primarily on our decision in *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017). There, we held that delivery of a controlled substance under Oregon law does not constitute a "drug trafficking crime" under the Controlled Substances Act because the term "drug trafficking crime" does not include solicitation, whereas Oregon's delivery-of-a-controlled-substance offense does. *Id.* at 989–93. Having concluded that Crum's prior conviction did not qualify as a "controlled substance offense" under § 4B1.2(b), the district court sentenced him using a base offense level of 14 rather than 20.

The government challenges the district court's ruling on appeal.

II

We first address Crum's argument that Oregon's delivery-of-methamphetamine offense sweeps more broadly than the federal "controlled substance offense" because it criminalizes soliciting the delivery of methamphetamine. We hold that Oregon's statute is not overbroad on this basis.

A

Our conclusion is compelled by our court's prior decision in *United States v. Shumate*, 329 F.3d 1026 (9th Cir.

2003), which held that delivery of marijuana under Oregon law qualifies as a "controlled substance offense" under § 4B1.2(b). *Id.* at 1028–31. That case dealt with delivery of a controlled substance under Oregon Revised Statutes § 475.992 (now codified at § 475.752), rather than the delivery-of-methamphetamine offense under § 475.890 at issue here. But because the definition of "delivery" is the same under both statutes, *see* Or. Rev. Stat. § 475.005, the analysis in *Shumate* applies here.

We concluded in *Shumate* that the definition of "controlled substance offense" in § 4B1.2 encompasses solicitation offenses. We acknowledged that the commentary to § 4B1.2 does not mention solicitation, even though it expands the definition of "controlled substance offense" to include aiding and abetting, conspiring, and attempting to commit such an offense. *Shumate*, 329 F.3d at 1030–31. However, we concluded that the commentary's "failure to mention solicitation has no legal significance." *Id.* at 1031 (internal quotation marks omitted). We explained that the commentary does not provide an exhaustive list of the offenses that are encompassed by the term "controlled substance offense" because the commentary uses the word "include." *Id.* at 1030–31. And since our court had previously relied on the same commentary to hold that the term "crime of violence" in § 4B1.2 includes solicitation offenses, we determined that the term "controlled substance offense" encompasses solicitation offenses as well. *Id.* (discussing *United States v. Cox*, 74 F.3d 189 (9th Cir. 1996)). We therefore held that delivery of a controlled substance under Oregon law is a categorical match under § 4B1.2, even though the Oregon statute encompasses soliciting the delivery of a controlled substance. *Id.*

*Shumate* controls here. The district court thus erred in applying *Sandoval*, which involved the term "drug trafficking crime" under the Controlled Substances Act. Although we held in *Sandoval* that the term does not encompass solicitation offenses, 866 F.3d at 989–90, the analysis for determining whether an offense qualifies as a "drug trafficking crime" under the Controlled Substances Act is different from the analysis for determining whether an offense qualifies as a "controlled substance offense" under the Sentencing Guidelines. *See Shumate*, 329 F.3d at 1030 n.5. The Controlled Substances Act "neither mentions solicitation nor contains any broad catch-all provision that could even arguably be read to cover solicitation." *Leyva-Licea v. INS*, 187 F.3d 1147, 1150 (9th Cir. 1999). In contrast, although the commentary to § 4B1.2 does not mention solicitation either, it does contain a catch-all term ("include") that we have interpreted to encompass solicitation. *See Shumate*, 329 F.3d at 1030. In this regard, our decision in *Sandoval* is inapplicable to this case.

## B

Crum asks us to reconsider our decision in *Shumate* on the basis of an argument that was not considered in that case. Crum contends that Application Note 1 of § 4B1.2 lacks legal force because it is inconsistent with the text of the guideline—an assertion that, if true, would preclude courts from relying on the commentary to expand the definition of "controlled substance offense" to include solicitation. *See Stinson v. United States*, 508 U.S. 36, 45–46 (1993). In Crum's view, because the plain text of § 4B1.2(b) does not encompass solicitation (or any of the inchoate offenses discussed in the commentary), the commentary may not expand the definition of "controlled substance offense" to include those offenses.

Our sister circuits are split on this issue. The First, Third, and Eleventh Circuits have held that the commentary is consistent with the text of § 4B1.2(b), as the commentary does not include any offense that is explicitly excluded by the text of the guideline. *United States v. Smith*, 54 F.3d 690, 693 (11th Cir. 1995); *United States v. Piper*, 35 F.3d 611, 617 (1st Cir. 1994); *United States v. Hightower*, 25 F.3d 182, 187 (3d Cir. 1994). On the other side of the split, the Sixth and D.C. Circuits have held that the commentary conflicts with the text of § 4B1.2(b). *United States v. Havis*, 927 F.3d 382, 385–87 (6th Cir. 2019) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1090–92 (D.C. Cir. 2018). The D.C. Circuit explained that the text of § 4B1.2(b) provides a "very detailed definition" of "controlled substance offense," which does not include the offenses listed in the commentary. *Winstead*, 927 F.3d at 1091 (internal quotation marks omitted). The court also pointed out that the Sentencing Commission included attempt offenses in § 4B1.2(a) when defining "crime of violence," but chose not to include such offenses in § 4B1.2(b) when defining "controlled substance offense." *Id.* Those drafting choices support the conclusion that the definition of "controlled substance offense" excludes attempt and the related offenses listed in the commentary. *Id.*

If we were free to do so, we would follow the Sixth and D.C. Circuits' lead. In our view, the commentary improperly expands the definition of "controlled substance offense" to include other offenses not listed in the text of the guideline. Like the Sixth and D.C. Circuits, we are troubled that the Sentencing Commission has exercised its interpretive authority to expand the definition of "controlled substance offense" in this way, without any grounding in the text of § 4B1.2(b) and without affording any opportunity for congressional review. *See Havis*, 927 F.3d at 386–87;

*Winstead*, 890 F.3d at 1092. This is especially concerning given that the Commission's interpretation will likely increase the sentencing ranges for numerous defendants whose prior convictions qualify as controlled substance offenses due solely to Application Note 1.

We are nonetheless compelled by our court's prior decision in *United States v. Vea-Gonzales*, 999 F.2d 1326 (9th Cir. 1993), *overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994), to reject the Sixth and D.C. Circuits' view. In *Vea-Gonzales*, we held that Application Note 1 of § 4B1.2 is "perfectly consistent" with the text of § 4B1.2(b). 999 F.2d at 1330. We explained that the text of § 4B1.2(b) defines the term "controlled substance offense" as encompassing violations of laws prohibiting the manufacture, import, export, distribution, or dispensing of drugs, and that aiding and abetting, conspiring, and attempting to commit such offenses constitute violations of those laws. *Id.* We thus concluded that Application Note 1 properly interprets the definition of the term "controlled substance offense" to encompass aiding and abetting, conspiracy, attempt, and other forms of the underlying offense. *Id.* No intervening higher authority is "clearly irreconcilable" with the reasoning of *Vea-Gonzales*, so we cannot overrule that precedent as a three-judge panel. *See United States v. Pepe*, 895 F.3d 679, 685–86 (9th Cir. 2018). As a result, we are not free to depart from the holding in our prior cases that the term "controlled substance offense" as defined in § 4B1.2(b) encompasses both solicitation and attempt offenses. *See Shumate*, 329 F.3d at 1029–31; *Vea-Gonzales*, 999 F.2d at 1330.

## III

We turn next to Crum's argument that Oregon's delivery-of-methamphetamine offense sweeps more broadly

than the federal definition of "controlled substance offense" because the Oregon offense criminalizes the mere offer to sell methamphetamine.

Crum's argument turns on the Oregon Court of Appeals' decision in *Pollock*, which was issued after our court decided *Shumate*. In *Pollock*, the Oregon Court of Appeals held that an individual can be convicted of delivery of a controlled substance under Oregon law if he has offered to sell that substance to another person. 73 P.3d at 300. In Crum's view, merely offering to sell a controlled substance does not constitute either soliciting or attempting to commit a "controlled substance offense." Thus, even if the definition of "controlled substance offense" under § 4B1.2 encompasses solicitation and attempt, Crum argues that Oregon's delivery-of-methamphetamine offense is still overbroad.

We reject Crum's argument. As we noted in *Sandoval*, offering to sell a controlled substance constitutes soliciting delivery of a controlled substance. 866 F.3d at 990–91 (discussing *Pollock*, among other Oregon cases); *see also United States v. Lee*, 704 F.3d 785, 790 n.2 (9th Cir. 2012). Solicitation does not fall within the definition of "drug trafficking crime" under the Controlled Substances Act, which is the term we were construing in *Sandoval*. But solicitation does fall within the definition of "controlled substance offense" under § 4B1.2 of the Sentencing Guidelines. *See Shumate*, 329 F.3d at 1030. Thus, an offer to sell a controlled substance under Oregon law is a categorical match for solicitation of a "controlled substance offense" under § 4B1.2.

\*          \*          \*

In sum, Crum's prior conviction for delivery of methamphetamine qualifies as a "controlled substance offense," as that term is defined in § 4B1.2 of the Guidelines. The district court should therefore have applied a base offense level of 20 rather than 14. *See* U.S.S.G. § 2K2.1(a)(4)(A). We vacate Crum's sentence and remand for resentencing.

**VACATED and REMANDED.**

WATFORD, Circuit Judge, dissenting:

I would affirm. In my view, Oregon's delivery-of-methamphetamine offense is overbroad, even if the term "controlled substance offense" under U.S.S.G. § 4B1.2(b) encompasses solicitation, as the majority concludes. Oregon law permits conviction for delivery of a controlled substance based on a mere offer to sell the drug to someone else. *See State v. Pollock*, 73 P.3d 297, 300 (Or. Ct. App. 2003). Because a mere offer to sell does not constitute solicitation of a "controlled substance offense," the Oregon offense criminalizes more conduct than the federal offense does, rendering the Oregon offense overbroad.

The problem with the majority's solicitation analysis, as I see it, is this. Solicitation is enticing or encouraging someone else to commit a crime. *See* Model Penal Code § 5.02(1) (American Law Institute 1985). Here, for our purposes, the crime that's covered by the federal definition of "controlled substance offense" is distributing or dispensing a controlled substance. To solicit that offense, the defendant must entice or encourage someone else to distribute or dispense drugs to a third party. If the defendant merely offers to sell drugs to someone else, he has not

solicited a "controlled substance offense" under the Guidelines.  At most, a mere offer to sell amounts to soliciting the other person to commit the crime of simple possession.  Simple possession, however, is not covered by the Guidelines' definition of "controlled substance offense"; only possession with the intent to distribute is.  U.S.S.G. § 4B1.2(b).

Our decision in *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017), on which the majority relies, reflects an incorrect view of what solicitation means.  In *Sandoval*, we equated offering to sell a controlled substance with soliciting delivery of a controlled substance, *id.* at 990–91, but for the reason just stated they are not the same thing.  That analytical error was not necessary to the conclusion we ultimately reached.  So I do not view that aspect of *Sandoval*'s reasoning as binding here, and I would not perpetuate the error we made there.