**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 9 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10386 |
| Plaintiff-Appellee, | D.C. No. CR-18-0394-CKJ District of Arizona |
| v. | |
| THOMAS BRICE VELASCO, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Submitted March 1, 2021[**]
Phoenix, Arizona

Before: HAWKINS, BEA, and BUMATAY, Circuit Judges.

Before pleading guilty to one count of felon in possession of ammunition in violation of 18 U.S.C. § 924, Thomas Velasco moved to suppress the ammunition found in his parked truck during a warrantless search. The district court concluded that Velasco lacked standing to challenge the search because he did not have a

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concluded that this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

reasonable expectation of privacy on his cousin's property, where his truck was parked. And even if he did, the district court held, the warrantless search was justified under the emergency doctrine and the exigency exception. Velasco challenges this order and his sentence of thirty-three months in prison. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.    "Generally, the Fourth Amendment prohibits officers from entering and searching a residence without first obtaining a warrant." *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005). But "[t]he emergency doctrine allows law enforcement officers to enter and secure premises without a warrant when they are responding to a perceived emergency." *Id.* This exception is based on "[t]he need to protect or preserve life or avoid serious injury." *United States v. Snipe*, 515 F.3d 947, 950–51 (9th Cir. 2008) (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)). We must decide "whether: (1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." *Id.* at 952.

Assuming that Velasco has standing to challenge the search of his truck,[1] the

---

[1] Fourth Amendment standing "is analytically distinct from 'case or controversy' standing in the Article III context." *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir. 2011). By contrast with standing under Article III, standing under substantive Fourth Amendment law is not jurisdictional. *See United States v. Garcia-Villalba*, 585 F.3d 1223, 1234 n.6 (9th Cir. 2009) (bypassing standing issue

emergency doctrine justified the warrantless search. The officers had an objectively reasonable basis to believe that there was an immediate need to protect themselves and anyone else on the property. Although Velasco identified himself and appeared to cooperate when the officers arrived at the scene, he denied possessing or firing a firearm, which the officers had heard minutes earlier but had not located. "Even if the situation were clear in hindsight [that there was no threat], . . . the police had only a few minutes in which to determine whether a lurking predator or injured person in need of assistance might be [on the property]." *United States v. Russell*, 436 F.3d 1086, 1090–93 (9th Cir. 2006) (affirming search because "there was confusion" as to how many persons were involved in the incident, justifying a search "to determine whether there were other injured persons"); *see also United States v. Black*, 482 F.3d 1035, 1039–41 (9th Cir. 2007) (affirming search where police detained suspect and used suspect's key to enter residence and "ma[k]e a quick sweep" because they could not locate the victim and reasonably "feared that [she] could have been inside . . . and in need of medical attention"). The officer's later testimony—that he conducted the cursory sweep to "look[] for a gunshot victim"— corroborates their motivation at the time.

_____

and proceeding to the merits of the challenged search). We decline to reach the issue of whether Velasco has standing to challenge the search of his truck, which was parked on his cousin's property. We also decline to reach the issue of whether the area of the property on which the truck was parked constituted part of the residence's curtilage such that Fourth Amendment protections applied.

3

The manner and scope of the search was also objectively reasonable. The officers heard the gunshot outside and detained Velasco outside; correspondingly, the officers confined their cursory sweep to outside. The officers did not enter the house or any of the other structures on the property. Rather, one officer quickly followed the dirt driveway that circled behind the house and glanced with his flashlight at the backyard "at a distance." He proceeded directly towards the smokey grey Dodge truck that he had heard about from police dispatch and that Velasco had emerged from when the officers arrived. The entire sweep took only minutes. Officers properly seized the ammunition that was in plain view during the course of this justified limited sweep.[2]

**2.** Under § 3E1.1(a) of the Sentencing Guidelines, a defendant is entitled to a two-level reduction in offense level if he "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). Under § 3E1.1(b), the defendant is eligible for an additional one-level reduction if the government files a motion "stating that the defendant has assisted authorities . . . by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." U.S.S.G. § 3E1.1(b).

Here, the Government declined to move for the additional one-level reduction

---

[2] Because we find that the search was justified under the emergency doctrine, we need not reach the issue of whether it was justified under the exigency exception.

4

under § 3E1.1(b). By the time Velasco pleaded guilty, the Government had completed a follow-up investigation, at Velasco's request; performed *Henthorn* checks on nine possible trial witnesses; and filed pretrial motions, which included a notice of intent to call an expert witness and notice of intent to introduce Velasco's statements at trial. This preparation was reasonable as Velasco had rejected two plea offers and confirmed his intention to proceed to trial. Velasco had also moved to continue the trial date seven times. Because the Government's rationale for declining to move for the one-level reduction under § 3E1.1(b) is supported by the record, the district court did not err in overruling Velasco's objection. *See United States v. Kubick*, 205 F.3d 1117, 1126 (9th Cir. 1999) (affirming district court's denial of § 3E1.1(b) reduction because the defendant's plea did not "occur particularly early in the case" (quoting U.S.S.G. § 3E1.1, Application Note 6)).

**3.** The presentence report calculated Velasco's base offense level at 20 (rather than 14) on the grounds that his prior conviction for Attempted Possession of a Narcotic Drug for Sale constituted a "controlled substance offense" under § 2K2.1(a)(4)'s recidivist enhancement. The Sentencing Guidelines define "controlled substance offense" as follows:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

5

U.S.S.G. § 4B1.2(b). Although the definition is silent on whether "controlled substance offense" includes inchoate offenses, such as Velasco's conviction for attempted possession, Application Note 1 states that it indeed "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2(b), Application Note 1.

In *United States v. Crum*, we considered whether a prior conviction for "delivery of methamphetamine" constituted a "controlled substance offense" under § 2K2.1(a)(4) and § 4B1.2(b). 934 F.3d 963, 965 (9th Cir. 2019). As here, the defendant argued that "Application Note 1 of § 4B1.2 lacks legal force because it is inconsistent with the text of the guideline" and improperly expands the definition of "controlled substance offense" to include inchoate offenses. *Id.* at 966. But we were "compelled by our court's prior decision in *United States v. Vea-Gonzales*, 999 F.2d 1326 (9th Cir. 1993)," in which we held that "Application Note 1 properly interprets the definition of the term 'controlled substance offense' to encompass [inchoate offenses such as] aiding and abetting, conspiracy, attempt, and other forms of the underlying offense." *Crum*, 934 F.3d at 967. As was true in *Crum*, "we are not free to depart from the holding in our prior cases that the term 'controlled substance offense' as defined in § 4B1.2(b) encompasses both solicitation and attempt offenses." *See id.* Velasco's argument fails.

**AFFIRMED**.

6